USCA1 Opinion

 

 United States Court of Appeals  for the First Circuit ____________________ No. 97-1645 RAFAEL APONTE MATOS, ET AL., Plaintiffs, Appellants, v. PEDRO TOLEDO D VILA, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Stahl, and Lynch, Circuit Judges. ______________ ____________________ Rafael Castro Lang with whom Marlene Aponte Cabrera was ___________________ _______________________ on brief for appellants. Sylvia Roger-Stefani, Assistant Solicitor General, with _____________________ whom Carlos Lugo-Fiol, Puerto Rico Solicitor General, and Edda ________________ ____ Serrano-Blasini, Deputy Solicitor General, were on brief for _______________ appellees Toledo-D vila, Zapata, Ort z-D az, and Fern ndez. John F. Nevares, with whom Lizzie M. Portela, Paul B. ________________ __________________ _______ Smith, and Smith & Nevares were on brief for appellees Haddock, _____ ________________ Torres-Lebr n, Laboy-Escobar, Col n, and Nieves-Dom nguez. Isabel Mu oz Acosta, Assistant United States Attorney, _____________________ with whom Guillermo Gil, United States Attorney, was on brief for _____________ appellees Plichta and Ilario. ____________________ February 3, 1998 ____________________ LYNCH, Circuit Judge. A Puerto Rican family whose LYNCH, Circuit Judge. _____________ home was searched under a warrant authorizing a weapons search sued the intruding Puerto Rican and federal officers and their supervisors on various claims of violation of civil rights. The district court dismissed all claims against all defendants in a series of summary judgment orders. One argument made by plaintiffs on appeal leads us to reinstate a portion of their case.  Plaintiffs claim that the Puerto Rican police officer, Ernesto Laboy-Escobar, who filed the affidavit and swore to facts in support of the search warrant lied in doing so, fabricating the "facts" asserted in order to establish probable cause. Plaintiffs' evidence presents genuine disputes of fact as to whether the material representations made by Laboy in the warrant application were true or were fabricated. It has long been well established that such a material fabrication violates the Warrant Clause of the Fourth Amendment. Further, we have no doubt that officers reasonably understand that they may not lie in order to establish probable cause in a warrant application. If plaintiffs are able to prove their claim at trial, Laboy will not be protected by qualified immunity. Accordingly, it was error to enter summary judgment in favor of Laboy on that claim. But plaintiffs have not made any showing that others assisted or even knew of the -2- 2 alleged falsehoods, nor have plaintiffs provided facts to support the claim that the search itself was unreasonable. For these and other reasons the dismissal of all other defendants and all other claims is affirmed.  I. Entry of summary judgment is reviewed de novo and we take the facts in the light most favorable to the party opposing summary judgment. See Acosta-Orozco v. Rodriguez- ___ _____________ __________ de-Rivera, 1997 WL 775350 at *1 (1st Cir. Dec. 22, 1997).  _________ On December 6, 1993, plaintiffs Cruz Mar a Andino Serrano (Andino Serrano) and her daughter Mar a Aponte Andino (Aponte Andino) were at home in R o Piedras, Puerto Rico, when Aponte Andino noticed several unmarked cars approaching the house. A group of people emerged from the cars and began walking toward the house. One member of the group had an ax; none was uniformed. Plaintiffs believed they were about to be robbed. Without identifying themselves as police officers, the individuals broke down the door to the house with the ax and entered. Only after plaintiffs begged the people not to kill them did the officers identify themselves as police and show the two women a search warrant for the house. The warrant authorized a search of plaintiffs' home for weapons, and nothing else.  The officers conducted the search in an efficient and orderly fashion, without the use of force. Several -3- 3 officers questioned the two women inside about whether there were large sums of drug money hidden inside the house. FBI Agent Michael Plichta also attempted to search the computer files to find evidence of drugs or drug money, but could not gain access to any files. The entire search lasted two hours, and failed to turn up evidence of illegal weapons, drugs, drug money, or, indeed, of any criminal activity. Another daughter, Iris Teresa Aponte Andino (Iris Teresa), returned and tried to enter the house. An officer outside refused to let Iris Teresa through the blockade.  In May of 1995, Aponte Andino, Andino Serrano, Rafael Aponte Matos (Andino Serrano's husband), and Iris Teresa filed this action for damages under 42 U.S.C. 1983, and against the federal officials under 28 U.S.C. 1331 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). ______ __________________________ They alleged violations of the Fourth and Fourteenth Amendment right to be free from unreasonable searches.  Plaintiffs sued two groups of defendants. The first group is composed of the state and federal line officers who participated in the search: Puerto Rican Police Officers Ernesto Laboy-Escobar, Ernesto Torres Lebr n, Jimmy Col n, Zulma Fern ndez, Iv n-Nieves Dom nguez, and FBI Agent Michael Plichta. Plaintiffs alleged that these defendants violated plaintiffs' right to be free from unreasonable searches by fabricating facts to obtain the search warrant, -4- 4 conducting a search that exceeded the scope of the warrant, and using excessive force in carrying out the search.1 Plaintiffs sued the second group of defendants, the supervisors, alleging that they failed adequately to train and supervise the first group of defendants. This group of defendants included both state and federal supervisors: Puerto Rico Police Department (PRPD) Superintendent Pedro Toledo-D vila, PRPD Supervisor Carlos Haddock, PRPD Auxiliary Superintendent of Inspection and Disciplinary Affairs Jos  Zapata, PRPD Lieutenant Juan Ort z-D az, and FBI Director Lewis Freeh and an unidentified FBI supervisor named "Ilario." Plaintiffs alleged that these defendants knew that the officers involved in the search had records of violence, and that the supervisors had callously disregarded plaintiffs' constitutional rights by inadequately supervising their subordinates. All defendants moved for summary judgment based on qualified immunity. On December 13, 1995, the district court granted in part Agent Plichta's motion for summary judgment, dismissing the claim that Plichta engaged in a "pretextual"  ____________________ 1. Plaintiffs also alleged in their complaint that the officials conducting the search deprived plaintiffs of their right to counsel during the search. They alleged that their lawyer was outside of the house, but the police would not allow counsel to be with her clients inside. Plaintiffs do not present this claim as a specific issue on appeal, nor develop any argument regarding the claim, and it is deemed waived. See King v. Town of Hanover, 116 F.3d 965, 970 (1st ___ ____ _______________ Cir. 1997) (collecting cases). -5- 5 search of plaintiffs' home. On May 29, 1996, the court entered partial judgment dismissing plaintiffs' claim that Plichta exceeded the scope of the warrant by searching plaintiffs' computer files. On July 22, 1996, the court entered partial judgment dismissing plaintiffs' claim against the unnamed federal supervisor "Ilario." On April 4, 1997, the court dismissed all the remaining claims against all defendants on qualified immunity grounds. Plaintiffs appeal all of these dismissals. II. Our review of the district court's grant of summary judgment is de novo. See St. Hilaire v. City of Laconia, 71 ___ ____________ _______________ F.3d 20, 24 (1st Cir. 1995). We will affirm if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to overcome defendants' motions for summary judgment, plaintiffs must come forward with "specific, provable facts which establish that there is a triable issue." Febus-Rodriguez v. _______________ Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). For a _________________ dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in -6- 6 favor of the non-moving party. See United States v. One ___ ______________ ___ Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992). _______________________ Qualified immunity protects both federal and state officials from liability for damages in a civil rights action if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting] officer[] possessed." Anderson v. ________ Creighton, 483 U.S. 635, 641 (1987). There are two aspects _________ to this standard. The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would "have understood that the challenged conduct violated that established right." Hegarty v. Somerset County, 53 F.3d _______ ________________ 1367, 1373 (1st Cir. 1995) (quoting Burns v. Loranger, 907 _____ ________ F.2d 233, 235-36 (1st Cir. 1990)). If the first level of the analysis yields a determination that the asserted constitutional right was not clearly established at the relevant time, then we need not proceed to the second prong; there is qualified immunity. See Soto v. Flores, 103 F.3d ___ ____ ______ 1056, 1064-65 (1st Cir. 1997).  A. The Use of False Statements to Obtain a Search Warrant ______________________________________________________ In 1978, the Supreme Court held in Franks v. ______ Delaware, 438 U.S. 154 (1978), that the use of false ________ -7- 7 statements to obtain a warrant, where the false statements are necessary to the finding of probable cause, violates the Fourth Amendment's warrant requirement. As the Franks Court ______ noted, the Warrant Clause of the Fourth Amendment itself contemplates the affiant's truthfulness:  [N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation.  438 U.S. at 164 (quoting U.S. Const. amend. IV).  Franks involved a challenge to a warrant in a ______ criminal proceeding and set forth the elements of a challenge: there must be allegations of deliberate falsehood or of reckless disregard for the truth on the part of the affiant; these allegations must be supported by an affidavit or sworn or otherwise reliable statements; the allegations must point specifically to the portion of the warrant application claimed to be false and must have a statement of supporting reasons; and the material that is the subject of the alleged falsity or reckless disregard must be necessary to establish probable cause. See id. at 171-72. It is not ___ ___ enough to allege negligence or innocent mistake. See id. ___ ___ This court has consistently followed the Franks rule. See, ______ ____ e.g., United States v. Valerio, 48 F.3d 58, 62 (1st Cir. ____ _____________ _______ 1995); United States v. Carty, 993 F.2d 1005, 1006 (1st Cir. _____________ _____ 1993). -8- 8 An officer who obtains a warrant through material false statements which result in an unconstitutional search may be held personally liable for his actions under 1983.2 "It has long been clearly established that the Fourth Amendment's warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit if the false statement is necessary for a finding of probable cause.'" Clanton v. Cooper, 129 F.3d _______ ______ 1147, 1154 (10th Cir. 1997) (quoting Franks, 438 U.S. at 155- ______ 56). See also Krohn v. United States, 742 F.2d 24, 26 (1st ________ _____ _____________ Cir. 1984) (noting plaintiff's civil rights claim that federal agent intentionally misrepresented facts necessary to obtain warrant).  The force of the Franks rule in a 1983 action is ______ reinforced by the decision of the Supreme Court this term in Kalina v. Fletcher, 1997 WL 756635 (U.S. Dec. 10, 1997). In ______ ________ that case, the Court held that a prosecutor is not entitled to absolute immunity for making false statements in an affidavit supporting an application for an arrest warrant, and may be personally liable for such actions. See id. at ___ ___ *3.  ____________________ 2. This is similar to, and derives from the same constitutional source as, the claim that an officer reasonably should have known that facts alleged in support of a warrant application were insufficient to establish probable cause. See Malley v. Briggs, 475 U.S. 335 (1986). ___ ______ ______ -9- 9 Here, plaintiffs allege that Laboy fabricated facts in support of probable cause in order to obtain a warrant to search plaintiffs' home, and that other defendants conspired with Laboy to obtain this fraudulently procured warrant. Plaintiffs have presented no evidence that other officers conspired with Laboy to falsely obtain a search warrant, and we readily affirm the district court's grant of summary judgment on that claim. As to Laboy, there is evidence that on December 2, 1993, FBI Agent Plichta received a tip that several individuals intended to break into plaintiffs' home, hoping to find two million dollars in hidden drug money and weapons, and that they planned to murder plaintiffs. On December 3, 1993, Plichta notified Sergeant Carri n of the Puerto Rico Police Department of the information, and suggested that they obtain a warrant and search plaintiffs' home for the money. We do not comment on the implicit suggestion that such information alone could support a warrant. In any event, the Puerto Rican Police did not seek a warrant on that basis. On December 4, Plichta discussed the matter with Laboy. Laboy told Plichta that on December 3, soon after Plichta spoke with Carri n, Laboy had independently established facts sufficient to show probable cause to search plaintiffs' home. He said he had observed, while working on another matter, an illegal weapon exchange in front of -10- 10 plaintiffs' home. On December 6, Laboy obtained a search warrant based on his affidavit, and invited Plichta to participate in the search. Laboy's affidavit in support of his application for a warrant stated: [On the] 3rd day of December, 1993, at about 4:30 p.m. I was in the area of Cupey in R o Piedras, Puerto Rico trying to locate an address about a complaint I am investigating and upon arriving to the Pedro Castro Road which is a dead end, when I turn at the end of the same I realized there was an individual approximately 6 feet tall, with white skin, brown hair giving a long wood and black color firearm to another white individual, who was approximately 5 feet 10 inches tall, wearing khaki pants and a black sweater and at that time both looked toward the vehicle I was in . . . and the individual in the khaki pants and black sweater walked toward the front and gave the weapon once again to the 6' individual with white skin and turned his back and entered the residence. The other individual also entered the residence. . . . That for my experience as investigating agent what was observed by me there was a violation to the Weapons Act of Puerto Rico and that said residence is being utilized for the custody of firearms.  The affidavit also described plaintiffs' house as the place to be searched and added that "[t]he services of the K-9 Unit of the Puerto Rico Police shall be utilized for this search and seizure."  The district court granted summary judgment to defendants, finding that "[p]laintiffs . . . have failed to -11- 11 produce a scintilla of non-speculative and reliable evidence that the Defendant-Officers either knowingly used false information or recklessly disregarded the truth in order to obtain the warrant." We disagree with the district court, and reverse the grant of summary judgment as to Laboy on this claim. Plaintiff Andino Serrano put in sworn evidence that she was in her house at the time Laboy says he saw two men enter the house.3 She says that no man entered the house. She also says that the physical description given by Laboy of one of the men who allegedly entered the house fits her husband. But, she says, her husband did not enter the house and was not at the house then. Her husband, plaintiff Rafael Aponte Matos, confirms this and says he was elsewhere.  It is difficult to think of what more could be said by the plaintiffs to raise a question as to the truth of Laboy's statements in the affidavit that two men carrying a  ____________________ 3. Andino Serrano's affidavit states:  I was at my house, and no male, not even my husband, entered my house at 4:30 p.m. on December 3, 1993. . . . I have read the sworn declaration submitted in order to procure a search warrant to search my home on December 6, 1993, and although the physical description of one of the individuals described in said declaration resembles my husband, I know for a fact he was not at my house that day at that time. -12- 12 weapon entered the plaintiffs' house.4 The plaintiff who was home at the time says that did not happen. Plaintiffs also suggest that Laboy had a motive to lie: he wanted access to the house to see if there was a "narco-treasure" there, as the information from Agent Plichta suggested.5 And finally, plaintiffs note, when the house was searched, no illegal weapon was found. This evidence tends to contradict Laboy's statement in the affidavit that he saw two men, one with an illegal weapon, entering the house, and that, based on his observation and experience, this meant the house was illegally being used for custody of firearms. That statement was essential to the probable cause determination. See ___ Franks, 438 U.S. at 155-56.  ______  ____________________ 4. Laboy attempts to buttress his position through the affidavit of Officer Nieves Dom nguez, who was with Laboy at the time. But Nieves saw nothing himself and simply reports what Laboy said after he made the alleged observations. 5. Plaintiffs say that on December 22, 1993, two weeks after the police search, three unidentified individuals robbed plaintiffs' home. One of them, dressed as a police officer, said they were there to investigate the December 6 search. When plaintiffs opened the door, the two other robbers drew their guns and held plaintiffs Andino Serrano, Aponte Andino, and Rafael Aponte Matos at gun point. The intruders questioned plaintiffs about the $2 million dollars in drug money. The robbers went directly to the places where plaintiffs kept their valuables, and took money, a handgun, and jewelry. Plaintiffs have alleged that the robbery was connected to the prior police search. -13- 13 Our decision does not forecast whether plaintiffs will succeed on this claim at trial; that is for the jury to decide.6 B. The Claim That the Search Exceeded the Scope of the ________________________________________________________ Warrant _______ The warrant authorized a search of plaintiffs' home for weapons, specifically for "anything [in plaintiffs' home] that is in violation to [sic] the Weapons Act of Puerto Rico." Plaintiffs claim that the searching police officers and Agent Plichta exceeded the scope of the warrant by asking them questions about two million dollars allegedly hidden in the house and by Plichta's efforts to get into their computer files. The Computer Search  ___________________ The unlawful computer search claim against Plichta is not properly before us, as plaintiffs failed timely to perfect an appeal from the district court's entry of summary judgment on that claim. On May 29, 1996, the district court issued a Memorandum and Order granting summary judgment to  ____________________ 6. The parties' briefing sometimes characterizes the Franks ______ issue as an issue of whether there was a pretextual search. We reject that conceptualization of the legal doctrines involved. The Franks rule is as we have stated it; not ______ whether the search was pretextual. Under the Fourth Amendment reasonableness calculus, inquiry into an officer's subjective motivations is rarely appropriate. See Ohio v. ___ ____ Robinette, 117 S. Ct. 417, 419 (1996); Whren v. United _________ _____ ______ States, 116 S. Ct. 1769, 1774 (1996). ______ -14- 14 Plichta on the computer search claim,7 and entered partial judgment dismissing the claim. This was a final judgment within the meaning of 28 U.S.C. 1291 and Fed. R. Civ. P. 54(b), and was immediately appealable to this court. Fed. R. App. P. 4(a) required plaintiffs to file a notice of appeal from that final judgment within 60 days. Plaintiffs did not file a notice of appeal in this case until May 5, 1997, long after the 60 day deadline had passed.8 The Search of the House _______________________ The issue whether the district court erred in granting summary judgment to the other defendants as well as Plichta on the claim that the search exceeded the scope of the warrant has been timely appealed.  In 1993 it was undoubtedly "clearly established" that a search must not exceed the scope of the search authorized in the warrant. See Maryland v. Garrison, 480 ___ ________ ________ U.S. 79, 84 (1986) ("By limiting the authorization to search to the specific areas and things for which there is probable  ____________________ 7. The court reasoned that because Plichta's attempt to search plaintiffs' computer files was unsuccessful (due to an apparent inability to "boot up" the hard drive), there was no search within the meaning of the Fourth Amendment. We do not address this conclusion because the appeal is untimely. 8. The appeal of the district court s grant of summary judgment in favor of the unnamed federal supervisor "Ilario" is not properly before us for the same reasons. The district court entered partial judgment in favor of "Ilario" on July 22, 1996. Plaintiffs had 60 days to appeal the judgment, but did not do so until the current appeal was taken on May 5, 1997. -15- 15 cause to search, the [Fourth Amendment particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."); cf. Horton v. California, ___ ______ __________ 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more."). But to state the rule is not to answer the question of when the search does in fact exceed the warrant. Plaintiffs' evidence is insufficient to show that the officers who carried out the search are not entitled to immunity. All plaintiffs offer is that when the officers began their search, they "questioned" plaintiffs Andino Serrano and Aponte Andino as to the whereabouts of two million dollars in hidden drug money. There is no evidence that the officers searched anywhere in the house that they otherwise could not have searched for a weapon. See United ___ ______ States v. Ross, 456 U.S. 798, 820 (1982) ("A lawful search of ______ ____ fixed premises generally extends to the entire area in which the object of the search may be found . . . ."). The Ross ____ Court provided an illustration pertinent here: "A warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." -16- 16 Id. at 821. Further, at least for immunity purposes, an ___ officer could reasonably think that weapons are more likely to be in a house if there are millions of dollars hidden in the house as well, and that the question was sufficiently related to the warrant. The topic of questioning during an encounter which itself does not violate the Fourth Amendment is not so clearly defined against the officers as to deprive them of immunity. Cf. Florida v. Royer, 460 U.S. 491, 497 ___ _______ _____ (1983) (officers do not violate Fourth Amendment by approaching individual in public place and posing questions); United States v. Mendenhall, 446 U.S. 544, 554 (1980) (Fourth _____________ __________ Amendment not violated when officers ask questions of individuals without particularized suspicion, where reasonable person would not feel obligated to answer). There is no suggestion that the searching officers ordered or forced plaintiffs to answer the questions, and plaintiffs were free not to answer. See Robinette, 117 S. Ct. at 421 ___ _________ (Fourth Amendment reasonableness requirement not violated where officer asks driver questions unrelated to initial justification for stop, and driver voluntarily answers questions and consents to search). Plaintiffs' evidence is inadequate to overcome qualified immunity. We affirm the district court's grant of summary judgment dismissing the claim that the search exceeded the scope of the warrant. -17- 17 C. Failure to Knock and Announce _____________________________ Plaintiffs assert that the officers who conducted the search violated plaintiffs' Fourth Amendment rights by failing to announce their presence and identify themselves as police before they entered the house by breaking down the door with an ax. The district court acknowledged that "upon approaching the entrance to the home, the officers never announced their presence or their purpose." It did not, however, rule on the claim that this was a violation of plaintiffs' rights, see Richards v. Wisconsin, 117 S. Ct. ___ ________ _________ 1416 (1997) (Fourth Amendment does not permit blanket exception to knock and announce rule); Wilson v. Arkansas, ______ ________ 115 S. Ct 1914 (1995) (failure to knock and announce forms part of reasonableness inquiry), nor do we. Even assuming that there is, on these facts, a right to have the police knock and announce, the asserted right was not clearly established as being of constitutional dimension at the time the alleged violation occurred.  As Richards makes clear, Wilson neither announced ________ ______ an absolute knock-and-announce rule nor created categorical exceptions to the rule for felony drug cases. In Richards, ________ the court found that a no-knock entry into a hotel room was justified where the officers had a reasonable suspicion that the occupant would destroy the evidence if given the opportunity. See Richards, 117 S. Ct. at 1422. We do not ___ ________ -18- 18 reach the question of whether it is reasonable for officers, armed with a warrant to search for weapons, to fail to announce they are police before they enter the area to be searched, because we resolve this on immunity grounds. In St. Hilaire, this court held that the _____________ requirement that officials identify themselves to the subject of a search or seizure, absent exigent circumstances, was "not clearly of constitutional dimension" until the Supreme Court decided Wilson in 1995, and that the notice requirement ______ "was not . . . clearly established in this Circuit as a constitutional requirement until Wilson." St. Hilaire, 71 ______ ___________ F.3d at 28. We thus held that defendant officials' failure to identify themselves to the plaintiff s decedent in 1990 did not violate a "clearly established law," and the defendants were "entitled to qualified immunity on [the failure to announce] theory." Id. ___ The same is true here. Plaintiffs' claim rests at best on Wilson; Wilson was decided in 1995; the search of ______ ______ plaintiffs' residence occurred in 1993. We affirm the grant of summary judgment to defendants on this claim. D. Use of Excessive Force in Executing the Search ______________________________________________ Plaintiffs claim that the search of their home was unreasonable because it was carried out with an excessive use of force.  -19- 19 Plaintiffs basic theory may be sound but their arguments seek shelter in the wrong doorway. Plaintiffs point us to the substantive due process "shocks the conscience" standard announced in Rochin v. California, 342 ______ __________ U.S. 165 (1952). But an "excessive force" claim that arises in the context of a search or seizure is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989) ______ ______ (expressly rejecting the Rochin "shocks the conscience" test ______ where the claim arises in the context of an investigatory stop). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396; see also Alexis v. McDonald's ___ __________ ______ __________ Restaurants, 67 F.3d 341, 352 (1st Cir. 1995) ("[A] viable ___________ excessive force claim must demonstrate that the police defendant's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation."). Plaintiffs point to the following actions in support of their excessive force claim: the officers  failure to announce their presence, the use of 10 to 15 officers to carry out the search, the use of an ax to knock down the door, the use of dogs during the search, and one -20- 20 officer s allegedly threatening behavior directed at plaintiff Iris Teresa.  We will assume that there may be searches carried out in such an excessive manner that they are unreasonable under the Fourth Amendment. It is also true that the typical "excessive force" claim arises in the context of an arrest and generally involves physical contact and injury to the arrestee. Here, there was no arrest, no physical force was used on any of the plaintiffs, and none sustained physical injury. To the extent there can be such a claim in the absence of physical force, the plaintiffs themselves stated in their depositions that the searching officers conducted themselves in an orderly manner once inside the home. Under these circumstances, we doubt any Fourth Amendment violation at all has been stated, let alone one unreasonable enough to overcome official immunity. See Hinojosa v. City of Terrell, ___ ________ _______________ 834 F.2d 1223, 1229 (5th Cir. 1988) (in 1983 suit, excessive force claim was not sustainable where there was no evidence of physical injury).  The only allegation worthy of discussion is that Officer Jimmy Col n directed abusive language at Iris Teresa when she sought entry to plaintiffs' home, and that he displayed his weapon and threatened to kill her if she did not stay behind the police barricade. -21- 21 We assume that Iris Teresa's version of the facts is accurate -- that Col n threatened her and pointed his gun at her. Even so, as the district court held, defendant Col n is entitled to qualified immunity. Iris Teresa insisted on entering the house at the time a police search for weapons was underway. Col n was posted at the blockade and it was his duty to ensure that no one entered the house. He reasonably could have believed that he needed to assert his authority in order to prevent Iris Teresa from passing through the blockade. Indeed, the threat may well have been reasonably intended to avoid the need to use any physical force to restrain her. There is no dispute that no physical force was used. Cf. Hinojosa, 834 F.2d 1223, 1229-30.9 The ___ ________ evidence is plainly insufficient to sustain a finding that Col n's actions were objectively unreasonable.   ____________________ 9. In Hinojosa, the Fifth Circuit confronted a similar ________ situation and found the lack of physical injury to be highly relevant in deciding the excessive use of force claim: There is absolutely no evidence . . . that Hinojosa was struck, or even touched, during the incident. Hinojosa did not claim to have suffered even minor physical injuries or intrusion. He sought no medical attention. . . . Thus, even stretching the testimony as far as possible in a light most favorable to Hinojosa, the only harm occasioned by Jones' pointing his gun was the understandable immediate emotional distress of Hinojosa at being the target of the gun point. 834 F.2d at 1230. -22- 22 E. Supervisory Liability _____________________ Finally, we affirm the district court s grant of summary judgment on the claim that defendants Haddock, Toledo-D vila, Zapata, and Ort z-D az are liable in their supervisory capacity. Plaintiffs argue that these defendants were negligent in the training and supervision of the searching officers, and that they therefore exhibited callous indifference to plaintiffs constitutional rights. Supervisory liability under 1983 "cannot be predicated on a respondeat theory, but only on the basis of the supervisor s own acts or omissions." Seekamp v. Michaud, _______ _______ 109 F.3d 802, 808 (1st Cir. 1997) (citations and quotation marks omitted). There is supervisory liability only if (1) there is subordinate liability, and (2) the supervisor s action or inaction was "affirmatively linked" to the constitutional violation caused by the subordinate. See id. ___ ___ (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, _______ __________________________ 902 (1st Cir. 1988)). That affirmative link must amount to "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference." Lipsett, 864 F.2d at 902. _______ There is no possibility of subordinate liability except for the falsification claim against defendant Laboy. See supra. But plaintiffs' evidence does not link Laboy's ___ _____ supposed falsehoods to supervisory condonation or callous -23- 23 indifference. None of the defendants here had any connection to Laboy's affidavit.  Plaintiffs offer evidence that defendant Haddock pressured his subordinates to execute at least three search warrants every month. They also offer documents they claim prove Laboy's history of misconduct, including a 1989 Puerto Rico Supreme Court case criticizing Laboy for having acted irresponsibly in a criminal case in 1985. See People v. ___ ______ Castillo Morales, 123 P.R. Dec. 690 (1989). That Haddock may ________________ have exerted pressure on his staff to execute search warrants is not evidence he acquiesced in or callously disregarded the making of false statements to a judicial officer. And while a supervisor's failure to take remedial actions regarding a miscreant officer may result in supervisory liability where it amounts to "deliberate indifference," see Diaz v. ___ ____ Martinez, 112 F.3d 1, 4 (1st Cir. 1997), a judicial opinion ________ citing Laboy as irresponsible in something he did nine years before the events at issue here does not establish such indifference.  III. The district court's grant of summary judgment is reversed and remanded with respect to the falsification claim _____________________ against defendant Laboy in the obtaining of the search -24- 24 warrant, and affirmed with respect to all other claims, ________ including the claims against all the remaining defendants.10 Each side shall bear its own costs.  ____________________ 10. After oral argument, plaintiffs submitted a "Supplemental Request for Relief." Plaintiffs request that if we reverse as to some defendants, we remand to the district court with the instruction that it exercise supplemental (pendent party) jurisdiction over the remaining defendants as to whom there are viable state law claims. See ___ 28 U.S.C. 1367. The only claim as to which we are reversing is the falsification claim against Laboy. As we see it, the claim that Laboy made false statements in his warrant application is entirely distinct from any state law claims that might arise out of the execution of the search itself. We decline plaintiffs' invitation to instruct the district court to exercise supplemental jurisdiction; but we do so without prejudice to plaintiffs' right to ask the district court, in its discretion, to exercise supplemental jurisdiction on remand. Our disposition of this matter obviates the need to rule on defendants' "Motion Requesting Appellants' Supplemental Request for Relief Be Stricken," which they submitted in response to plaintiffs' "Supplemental Request."  -25- 25