# United States Court of Appeals
## For the First Circuit

No. 02-1053

RICHARD HATCH, JR.,

Plaintiff, Appellant,

v.

TOWN OF MIDDLETOWN;
FINANCE DIRECTOR FOR THE TOWN OF MIDDLETOWN;
SHAWN J. BROWN; FRANK KLUTH;
BARRY SMITH; and DAVID LEONARD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella, Circuit Judge,
B. Fletcher,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Joseph R. Palumbo, Jr. for appellant.

Marc DeSisto, with whom Kathleen M. Powers was on brief for appellees.

November 19, 2002

_____
        * Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  On April 27, 2000, Plaintiff Richard Hatch was arrested by the Middletown, Rhode Island police department and charged with assaulting his adopted son ("John Doe").[1]  There was immediate media interest in the arrest due to Hatch's impending television appearance on the reality game show Survivor during its premier season.  Although the police initially released only a redacted copy of Hatch's arrest report to the press, the National Enquirer soon procured Hatch's redacted mug shot and a copy of his son's statement to the police, featuring both in an article published on May 16, 2000.  Hatch subsequently filed this § 1983 and state law action against the Town of Middletown, Shawn J. Brown, Frank Kluth, Barry Smith, David Leonard and other unnamed police officers in the United States District Court, claiming Fourth Amendment violations arising from a false arrest and violations of his right to privacy under federal and state law.

The district court initially granted defendants' summary judgment motion in part, dismissing Hatch's Fourth Amendment claim, his constitutionally-grounded 42 U.S.C. § 1983 claim, and his state law privacy claims against all defendants except unidentified officers.  With respect to the claims against Captain Leonard and Lieutenant Smith, the court determined that the individual police

---

[1]Ultimately, the state dropped the assault charges against Hatch after a Rhode Island Family Court concluded that there was no probable cause to believe that the child had been abused.

officers could assert qualified immunity to escape civil liability under Rhode Island's privacy statute. The court at first denied defendants' motion for summary judgment on the state law privacy claims against various unnamed police officers who allegedly released Hatch's mug shot and excerpts of the statement made to the police by appellant's son. The judge issued an Order to Show Cause why the case should not be dismissed since the only remaining defendants were unidentified officers. Hatch failed to answer the Order to Show Cause, and the district court dismissed the case.

Hatch now appeals only his state law privacy claims against Captain Leonard and Lieutenant Smith.[2] After reviewing the

---

[2]When Hatch originally sought redress in the district court under 42 U.S.C. § 1983 for alleged violations of his federal right to privacy, the district court exercised supplemental jurisdiction over appellant's pendent state law privacy claims. See 28 U.S.C. § 1367 (1993). We retain jurisdiction over Hatch's state law claims on appeal even though Hatch has not appealed his federal privacy claims. See United Int'l Holdings, Inc. v. Wharf Holdings Ltd., 210 F.3d 1207, 1219-20 (10th Cir. 2000) ("The scope of a federal court's jurisdictional power . . . does not fluctuate with the fate of a federal claim at trial or on appeal, but exists if the federal claim initially had substance sufficient to confer subject matter jurisdiction on the [district] court.").
   The Tenth Circuit subsequently observed that "[a] federal claim is insubstantial, and incapable of conferring jurisdiction, only if it is obviously without merit or is wholly frivolous, or is clearly foreclosed by prior decisions of the Supreme Court." Id. at 1220 (internal citations omitted). Appellees do not argue that the district court abused its discretion in exercising supplemental jurisdiction over Hatch's state law claims, and our review of the record does not indicate that Hatch's federal privacy claims were sufficiently devoid of merit to vitiate federal subject matter jurisdiction over Hatch's state law claims on appeal. See Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 200 (1st Cir. 2000) (noting that standard of review for supplemental jurisdiction determinations is abuse of discretion).

record, we agree with the district court that Captain Leonard acted reasonably in the face of two conflicting state statutes, and further conclude that Hatch has failed to establish a claim for violation of privacy against Lieutenant Smith under Rhode Island's Privacy Statute. Accordingly, we affirm the decision of the district court.

## I. BACKGROUND

The events leading up to Richard Hatch's arrest are well documented in Hatch v. Dep't for Children, Youth & Their Families (Hatch I), 274 F.3d 12 (1st Cir. 2001).[3] We briefly recount them here before turning to the post-arrest period. On the morning of April 27, 2000, a teacher and nurse at John's elementary school noticed that John had a bump on his forehead and red marks across his neck. John disclosed that he had sustained the injuries during an early morning run with his father. According to John, he was having trouble keeping the pace set by the appellant, causing him to fall to the pavement. John claimed that Hatch reacted by first pulling the boy up by his earlobe and then forcing him to do pushups by grabbing his neck and pushing his head into the cement.

---

[3]In Hatch I, Richard Hatch brought suit against the Rhode Island Department for Children, Youth, and Their Families and two agency caseworkers, seeking monetary damages for alleged violations of his due process right to uninterrupted custody of his child. We affirmed the district court's grant of summary judgment for defendants after determining that the Eleventh Amendment barred Hatch's suit against the agency, and that the caseworkers were entitled to qualified immunity.

After hearing John's story, school officials contacted the Rhode Island Department for Children, Youth and Their Families (DCYF) and the Middletown police. Two police officers brought John to the Middletown police station, where he was interviewed by a DCYF caseworker and examined by a doctor. The police then contacted Hatch and asked him to report to the police station. Upon his arrival he was arrested and charged with assaulting his son. The next day, Captain David Leonard, the Public Information Officer for the Middletown police, redacted a copy of plaintiff's arrest report and released it to the media. The information withheld from the report included the mug shot of the plaintiff and the identification of the child.

Over the next few days Captain Leonard fielded requests from the local and national media for Hatch's arrest report and arraignment information. After the initial media blitz, Lieutenant Barry Smith received a call from the National Enquirer. He informed the Enquirer that "the bump on the boy's head was the size of an egg. He had red marks on his neck and other bruises." A May 16, 2000 article reporting Hatch's arrest included this comment as well as the mug shot withheld from his arrest report and large excerpts of John's statement to the police. Lieutenant Smith denied having released the mug shot or John's statement to the National Enquirer. Although appellees concede that this release was a violation of department policy, Hatch offered no evidence to

-5-

implicate Lieutenant Smith or any other Middletown police officer in the unauthorized release of these materials.

The district court granted defendants' summary judgment motion and dismissed Hatch's false arrest and privacy claims. In this appeal, Hatch challenges the district court's bench ruling that the two police officers were entitled to qualified immunity given the uncertainty under Rhode Island law as to what information concerning Hatch's arrest could be released as a public record:

> That would be a very difficult question because there's two statutes that seem to conflict here . . . . Given those conflicting statutes and given the fact that Mr. Hatch's privacy right under Rhode Island law arises from a statute that requires, among other things, that the fact be a private fact, it seems to me that it is totally unreasonable and unrealistic to expect that a reasonable officer, under these circumstances, would have recognized that releasing this information violated some right of Mr. Hatch's if, in fact, it did.

We review the district court's grant of summary judgment de novo, Kelley v. LaForce, 288 F.3d 1, 4 (1st Cir. 2002), and begin our analysis by examining the relevant Rhode Island statutes.

## II.  DISCUSSION

### A.  The Dissemination of Arrest Information Under Rhode Island Law

Appellant bases his state cause of action on Rhode Island General Laws § 9-1-28.1(b) (the "Privacy Statute"), which states in relevant part:

> Every person who subjects or causes to be subjected any citizen of this state . . . to a

> deprivation and/or violation of his or her right to privacy shall be liable to the party injured in an action at law, suit in equity, or any other appropriate proceedings for redress in either the superior court or district court of this state.

To recover civil damages for a privacy violation, the plaintiff must establish that:

> (A) There has been some publication of a private fact;
>
> (B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities.

R.I. Gen. Laws § 9-1-28.1(a)(3)(i).

For a fact to be "private" within the meaning of the statute, "plaintiffs must demonstrate that they actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it." Pontbriand v. Sundlun, 699 A.2d 856, 865 (R.I. 1997). While this standard frequently presents questions of fact, the Supreme Court of Rhode Island has categorically determined that plaintiffs have no reasonable expectation of privacy with respect to information contained in a public record: "[I]t is clear that the statutory right to privacy in Rhode Island does not extend to those records deemed public." Doe v. Edward A. Sherman Publ'g Co., 593 A.2d 457, 459 (R.I. 1991). Consequently, the critical issue in this case is whether Hatch's arrest report is considered a public record under Rhode Island law. The parties point us to two

-7-

statutes that bear on the classification of this information -- the Rhode Island Access to Public Records ("Public Records") Statute that compels the release of all arrest records, and the Child Abuse Statute that requires all records concerning reports of child abuse to be kept confidential.[4]

    1.  The Rhode Island Access to Public Records Statute

Of the two statutes that potentially govern the status of Richard Hatch's arrest information, only the Public Records Statute refers specifically to arrest records.  See R.I. Gen. Laws § 38-2-2(4)(i)(D).  The statute narrowly circumscribes the universe of records maintained by law enforcement agencies that are <u>not</u> considered public records, providing that "records shall not be deemed public only to the extent that the disclosure of the records or information . . . (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy."  <u>Id.</u>  However, this provision concludes with the following caveat: "Records relating to management and direction of a law enforcement agency <u>and records or reports reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public</u>."  <u>Id.</u> (emphasis added).

The significance of classifying particular documents as "public records" under Rhode Island law is twofold.  First, any

---

[4]The relevant provisions of these two statutes and the Rhode Island Privacy Statute are reproduced in the Appendix at the end of this opinion.

person is entitled to review and/or duplicate public records under reasonable conditions prescribed by the custodian: "Except as provided in § 38-3-2(4), all records maintained or kept on file by any public body . . . shall be public records and every person or entity shall have the right to inspect and/or copy those records at such reasonable time as may be determined by the custodian thereof." R.I. Gen. Laws § 38-2-3(a). Hence, sections 38-2-2(4)(i)(D) and 38-2-3(a) impose an affirmative obligation on law enforcement agencies to make arrest records available to the public. Second, as noted above, a determination that particular records are public is dispositive as to any privacy claims arising from the release of those records. Edward A. Sherman Publ'g, 593 A.2d at 458.

2. The Rhode Island Child Abuse Statute

Recognizing that certain state or federal laws may impose confidentiality requirements with respect to specific information, the Public Records Statute places that information outside the scope of Title 38: "For the purposes of this chapter, the following records shall not be deemed public . . . (S) Records, reports, opinions, information, and statements required to be kept confidential by federal law or regulation or state law, or rule of court." R.I. Gen. Laws § 38-2-2(4)(i)(S).

The Rhode Island Child Abuse Statute arguably functions as such a law. Without explicitly mentioning arrest records, the

statute provides that "[a]ll records concerning reports of child abuse and neglect, including reports made to the department,[5] shall be confidential except as specifically provided by this chapter . . . ." R.I. Gen. Laws § 40-11-13(a). The subsequent clause of the provision imposes penalties for the disclosure of these records, but limits the class of people subject to punishment: "Any employee or agent of the department violating any of the provisions of this section shall be guilty of a misdemeanor, and shall be fined not more than two hundred dollars ($200) or shall be imprisoned for not more than six (6) months or both." R.I. Gen. Laws § 40-11-13(b).

3. Interpreting the Public Records and Child Abuse Statutes

Read together, the Public Records and Child Abuse Statutes are susceptible to at least three reasonable interpretations. Appellees observe that § 38-2-2(4)(i)(D) of the Public Records Statute classifies all "records or reports reflecting the initial arrest of an adult and the charge or charges brought against an adult" as public documents. They argue that because Hatch's arrest record clearly falls within the scope of this provision, Captain Leonard and Lieutenant Smith only divulged information that was already deemed public under Rhode Island law. Appellees further assert that § 40-11-13 of the Child Abuse Statute

---

[5]The "department" referred to in § 40-11-13(a) is defined earlier in Chapter 11 of Title 40 as the DCYF. R.I. Gen. Laws § 40-11-2.

does not specifically refer to arrest records in its confidentiality provision, and by its terms in subsections (a) and (b) appears only to encompass DCYF records and personnel rather than the records of a local police department. Hence, the Child Abuse Statute does not undermine the public status of the arrest information in the records of the Middletown police department.

Alternatively, the language of § 40-11-13(a) of the Child Abuse Statute emphasizes that "all records concerning reports of child abuse and neglect, including reports made to the department, shall be confidential . . . ." R.I. Gen. Laws § 40-11-13(a) (emphasis added). Significantly, the phrase "all records" in § 40-11-13(a) is not modified by any language restricting the confidentiality requirement to DCYF records or personnel. Thus the Child Abuse Statute might be precisely the kind of confidentiality statute contemplated by § 38-2-2(4)(i)(S) of the Public Records Statute, which removes particular records from its purview if another law mandates that the records remain confidential. Under this reading of the statutes, § 40-11-13 of the Child Abuse Statute creates an exception to the final sentence of § 38-2-2(4)(i)(D) of the Public Records Statute, and prohibits the release of any information concerning reports of child abuse.

Hatch forgoes this hardline stance in favor of a third interpretation of the statutes. Focusing on the language of § 38-2-2(4)(i)(D) of the Public Records Statute, he argues that the

phrase "records or reports <u>reflecting</u> the initial arrest of an adult and charges brought against [him]" only authorizes the disclosure of a skeletal account of the arrest consistent with the provision's denial of public record status to information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." To the extent that any information beyond Richard Hatch's name and a simple recitation of the charge was released to the media, Hatch insists that his right to privacy was violated.

We find no guidance in the statutes or common law of Rhode Island to aid us in determining what level of detail runs afoul of the "reflecting" language in § 38-2-2(4)(i)(D) of the Public Records Statute. Indeed, the reasonableness of all three interpretations illustrates the difficulties faced by Rhode Island police officers unsure as to whether an arrest record containing a report of child abuse is considered a public record.

## B. **Qualified Immunity**

### 1. General Principles

We observed in <u>Hatch I</u> that "the law strives to balance its desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive." <u>Hatch</u>, 274 F.3d at 20 (quoting

-12-

<u>Buenrostro</u> v. <u>Collazo</u>, 973 F.2d 39, 42 (1st Cir. 1992)).  In the §
1983 context, the United States Supreme Court has struck this
balance by applying a two-part test to determine whether plaintiffs
may hold government officials civilly liable for alleged violations
of constitutional and federal statutory rights:

> [A]ppellate assessment of a qualified immunity
> claim is apportioned into two analytic
> components. First, if the right asserted by
> the plaintiff was "clearly established" at the
> time of its alleged violation, we are required
> to assume that the right was recognized by the
> defendant official, <u>see</u> <u>Harlow</u> [v.
> <u>Fitzgerald</u>], 457 U.S. [800,] 818 [(1982)];
> <u>Rodriguez</u> v. <u>Comas</u>, 888 F.2d 899, 901 (1st
> Cir. 1989); second, we will deny the immunity
> claim if a reasonable official situated in the
> same circumstances should have understood that
> the challenged conduct violated that
> established right, <u>see</u> <u>Anderson</u> [v.
> <u>Creighton</u>], 483 U.S. [635,] 640-41 [(1987)];
> <u>Rodriguez</u>, 888 F.2d at 901.

<u>Burns</u> v. <u>Loranger</u>, 907 F.2d 233, 235-36 (1st Cir. 1990); <u>see</u> <u>also</u>
<u>Camilo-Robles</u> v. <u>Zapata</u>, 175 F.3d 41, 43 (1st Cir. 1999); <u>Aponte</u>
<u>Matos</u> v. <u>Toledo Davila</u>, 135 F.3d 182, 186 (1st Cir. 1998).

Both prongs of this standard afford government officials
some degree of protection when they confront statutory ambiguity
while executing their official duties.  If we assume that state
officers in Rhode Island may seek the same qualified immunity from
state law actions that is available to state officials sued under
§ 1983, the contradictory provisions in the case at bar in the
Public Records and Child Abuse statutes undermine Hatch's claim
that his rights were "clearly established" with respect to the

-13-

narrow question of whether police officers are prohibited from releasing arrest reports containing information of child abuse. As we observed in <u>Aponte Matos</u>, this resolution of the first prong is sufficient to support a finding of qualified immunity. <u>Aponte Matos</u>, 135 F.3d at 187. Alternatively, under the objective "reasonable officer" standard embodied in the second prong, Captain Leonard and Lieutenant Smith are strong candidates for qualified immunity given the absence of any basis for a "reasonable officer" to conclude that one of the three interpretations outlined above is the only correct one.

However, before we can conclude that the two police officers are entitled to qualified immunity, we must examine our earlier assumption that Rhode Island provides immunity in state law actions comparable to the immunity that state officers enjoy in § 1983 cases, and determine whether this is actually the case.

2. Qualified Immunity Under Rhode Island Law

Although counsel for Hatch conceded at oral argument that qualified immunity is available to state officers defending claims under Rhode Island law, there is no decision from the Supreme Court of Rhode Island expressly affording government officials common law immunity from state law claims. Nonetheless, Rhode Island's high court has left little doubt that the defense exists for state officers under certain circumstances. In <u>Pontbriand</u>, the Governor of Rhode Island released the account information of bank depositors

to encourage the state legislature to pass legislation compensating depositors in state banks and credit unions that were closed because they had no federal deposit insurance. Pontbriand, 699 A.2d 856. The account holders brought suit alleging violations of their right to privacy under state law, prompting the Governor to claim that he was entitled to "good faith" immunity even if his actions violated the state privacy statute. Id. Reviewing the availability of this defense, the court observed that "[a]lthough not extensively discussed in our prior cases, it seems beyond doubt that the Governor may be entitled to some form of common law immunity for his acts performed in good faith." Pontbriand, 699 A.2d at 867 (original emphasis) (citing Harlow v. Fitzgerald, 457 U.S. 800, 813-19 (1982), and Scheuer v. Rhodes, 416 U.S. 232, 247-48 (1974)). The court declined to rule on the availability of immunity, observing that "the issue was neither extensively briefed by the parties nor reached by the trial justice below." Pontbriand, 699 A.2d at 867. However, the court signaled the trial judge that barring plaintiffs' claims on grounds of qualified immunity remained an option on remand: "[W]e are of the opinion that the determination regarding whether official qualified immunity exists should be left for determination upon remand." Id.

Two years after issuing its decision in Pontbriand, the Supreme Court of Rhode Island addressed qualified immunity in a context similar to the facts of this case. See Ensey v. Culhane,

727 A.2d 687 (R.I. 1999).  Ensey was falsely accused by his ex-girlfriend of kidnaping and raping her at gunpoint. Notwithstanding the existence of facts strongly suggesting the plaintiff's innocence, the police obtained an arrest warrant and issued a verbal press statement revealing Ensey's identity, the charges, and the facts surrounding the investigation.  After the police uncovered the fabrication, plaintiff filed suit against the Superintendent of the State Police and ten unnamed police officers, alleging a host of violations of his state and federal constitutional rights and his right to privacy under Rhode Island law.  The Supreme Court of Rhode Island made the following comments in reviewing the defendants' assertion of qualified immunity:

> [D]efendants argue that the doctrine of qualified immunity, an immunity typically afforded to government officials on the federal level, bars plaintiff's claims.  We are of the opinion that, in an appropriate case, the doctrine of qualified immunity might well be applied by this Court.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

Id. at 690-91.  However, because Ensey could not identify the police officers who allegedly violated his rights during the investigation, the court did not reach the question of whether particular state officers were entitled to qualified immunity.

-16-

Significantly, Pontbriand and Ensey reflect Rhode Island's recognition of a qualified immunity defense under state law analogous to the federal doctrine established by the United States Supreme Court in Harlow v. Fitzgerald, cited with approval in both Rhode Island decisions, and routinely applied in § 1983 cases. Hence, we conclude that Hatch's concession that qualified immunity is available to officers defending state law claims is well grounded in the law of Rhode Island.

### 3. Captain Leonard and Lieutenant Smith

Captain Leonard had to navigate between two statutes, both of which purported to bestow individual rights on a segment of the population. The Public Records Statute expressly grants individuals the right to inspect and/or duplicate any documents that are classified as public records, including "records or reports reflecting the initial arrest of an adult and the charge or charges brought against an adult . . . ." R.I. Gen. Laws § 38-2-2(4)(i)(D). The Child Abuse Statute protects the parties to an alleged incident of child abuse by preserving the confidentiality of all records documenting the event. R.I. Gen. Laws § 40-11-13(a). Hence, if Captain Leonard had interpreted § 40-11-13 of the Child Abuse Statute to prohibit the release of Hatch's arrest record in its entirety, members of the media could have legitimately argued that the police department had violated the Public Records Statute. Given these uncertainties under Rhode

-17-

Island law, Captain Leonard did not violate any clearly established right of Hatch to the privacy of the information released to the media by Leonard. Accordingly, we find that Leonard is entitled to qualified immunity under Rhode Island law.

As for Lieutenant Smith, we do not even have to reach the issue of qualified immunity. His minor embellishments of the arrest report, while probably ill-advised, did not divulge new information. Instead, he merely characterized facts contained in a document that had previously been released to the media. Once Captain Leonard released the report to the press, Hatch could no longer maintain the expectation that the details contained in the publicized report would remain private. Swerdlick v. Koch, 721 A.2d 849, 859 (R.I. 1998) ("There is no liability [for publication of private facts] when the defendant merely gives further publicity to information about the plaintiff that is already public.") (quoting Restatement (Second) Torts, § 652D cmt. b). Hence, Smith's subsequent release of information to the National Enquirer cannot form the basis of a claim under Rhode Island's Privacy Statute.

Hatch's complaint also names the Town of Middletown as a defendant. However, his arguments to the district court throughout the summary judgment phase and before us focus entirely on the liability of Captain Leonard and Lieutenant Smith to the exclusion of the Town. Indeed, appellant's brief contains only two opaque

references to the Town's policies, without any elaboration of a theory of municipal liability. We will not address a claim developed so perfunctorily.[6] Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir. 1990) ("It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned.").

Accordingly, the district court's entry of summary judgment in favor of the defendants is **affirmed.**

So ordered.

---

[6]There are also vague and undeveloped references to unnamed police officers in appellant's brief. With regard to the officers who allegedly released Hatch's mug shot and John Doe's statement to the police, we note that the district court's initial grant of partial summary judgment left open the possibility that Hatch could proceed to trial against these officers. However, Hatch's failure to proffer any evidence identifying the officers responsible for the release of these materials led the district court to dismiss this element of his claim as well, and Hatch's brief cannot be read to challenge this ruling on appeal.

## Appendix

All references below are to provisions of the Rhode Island General Laws (2001).

## 9-1-28.1  Right to Privacy -- Action for Deprivation of Right

(a)  Right to privacy created.  It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually . . . (3) The right to be secure from unreasonable publicity given to one's private life . . . (i) In order to recover for violation of this right, it must be established that: (A) There has been some publication of a private fact; (B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities . . .

(b)  Right of action.  Every person who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to a deprivation and/or violation of his or her right to privacy shall be liable to the party injured in an action at law, suit in equity, or any other appropriate proceedings for redress in either the superior court or district court of this state.  The court having jurisdiction of an action brought pursuant to this section may award reasonable attorneys' fees and court costs to the prevailing party.

## 38-2-2  Access to Public Records (Definitions)

(4)(i) For the purposes of this chapter, the following records shall not be deemed public . . . (D) All records maintained by law enforcement agencies for criminal law

enforcement and all records relating to the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal investigation by any law enforcement agency. Provided, however, such records shall not be deemed public only to the extent that the disclosure of the records or information . . . (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

Records relating to management and direction of a law enforcement agency and records or reports reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public.

**38-2-3    Access to Public Records (Right to Inspect and Copy Records)**

(a)    Except as provided in § 38-2-2(4), all records maintained or kept on file by any public body, whether or not those records are required by any law or by any rule or regulation, shall be public records and every person or entity shall have the right to inspect and/or copy those records at such reasonable time as may be determined by the custodian thereof.

**40-11-13   Abused and Neglected Children (Confidentiality of Records and Reports)**

(a)    All records concerning reports of child abuse and neglect, including reports made to the department, shall be confidential except as specifically provided by this chapter or as specifically provided by § 42-72-8 or specifically authorized by the family court in furtherance of the purposes directly connected with this chapter.

(b)     Any employee or agent of the department violating any of the provisions of this section shall be guilty of a misdemeanor, and shall be fined not more than two hundred dollars ($200) or shall be imprisoned for not more than six (6) months or both.