**Donald RUFF, et al., Plaintiffs,**

v.

**Marvin RUNYON, et al., Defendants.**

**No. 1:97–CV–2224.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 3, 1999.

Alan I. Goodman, Cleveland, OH, Kenneth D. Myers, Cleveland, OH, for plaintiffs.

Lynne H. Buck, Office Of The U.S. Attorney, Cleveland, OH, for defendants.

## OPINION AND ORDER

GWIN, District Judge.

This action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq. On August 24, 1998, Defendant United States of America filed its second motion to dismiss this action [Doc. 53].[1] In its motion, the defendant argues that this Court does not have jurisdiction to consider plaintiffs' claims for intentional infliction of emotional distress, malicious prosecution, and abuse of process. Defendant United States contends the claims are preempted by the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101 et seq.

While this motion to dismiss was pending, the defendant filed a motion for summary judgment.[2] [Doc. 78]. In this mo-

---

1. Magistrate Judge Thomas addressed defendant's first motion to dismiss in his opinion of August 3, 1998. Judge Thomas dismissed all counts except the three subject to the instant motion. These claims survive against the United States only.

2. The defendant's motion was one to dismiss or, in the alternative, for summary judgment.

Thus, this motion is the defendant's third motion to dismiss. The defendant raises the same arguments about lack of subject matter jurisdiction here as it did in its first motion to dismiss. Judge Thomas considered the defendant's arguments when preparing the August 3, 1998, opinion. Although not all of the defendant's arguments were addressed direct-

tion for summary judgment, the defendant contends plaintiffs show no issues for trial regarding plaintiffs' claims for malicious prosecution, abuse of process, and emotional distress.

In this opinion, the Court must decide whether a substantial question exists regarding FECA's application to these claims. If so, the Court must defer the decision on the merits of plaintiffs' case until after the Secretary of Labor determines whether FECA applies. If the FECA does not apply, the Court will go on to decide the defendant's motion for summary judgment.

Because the Court finds no substantial evidence shows that FECA coverage exists, the Court denies Defendant United States' motion to dismiss. Having found that this action should not be stayed, the Court considers defendant's motion for summary judgment. After reviewing defendant's motion for summary judgment, the court finds no genuine issues survive for trial. The Court grants defendant's summary judgment motion and dismisses this action.

## I. FACTUAL BACKGROUND

Plaintiffs Donald Taylor, Fletcher Carr, and Gary Herron [3] bring this action under the FTCA. They allege that the Postal Service wrongfully targeted and pursued prosecution of them for drug-related crimes they did not commit.

Plaintiffs were employees of the United States Postal Service in 1990 through 1992. During this time, the Postal Inspection Service undertook an internal drug "sting" operation targeting employees.

Under the supervision of John Wascak and Michael Sitter, Postal Inspectors Tim Marshall and Dan Kuack investigated alleged drug abuse and trafficking by and among Postal Service employees in Cleveland, Ohio. While conducting this investigation, Marshall and Kuack directed confidential informants to buy illegal drugs from Postal Service employees.

On September 19, 1991, the Cuyahoga County Grand Jury indicted the plaintiffs on multiple drug charges. Later the plaintiffs pled guilty to lesser crimes. The United States Postal Service fired them.

Long after pleading guilty, the plaintiffs learned that the indictments were based on false information provided by the informants, Willie Kemp and Howard Rice. On April 4, 1995, plaintiffs moved to withdraw their guilty pleas. Cuyahoga County Common Pleas Court Judges granted the respective motions and ordered new trials. The Cuyahoga County Prosecutor then chose not to bring the claims against plaintiffs to trial. In March 1996, the Cuyahoga County Prosecutor dismissed the charges against the plaintiffs.

With their complaint, the plaintiffs claim the Postal Service sought criminal charges against plaintiffs with knowledge that the informants had lied about the purported drug buys involving the plaintiffs.

On August 28, 1997, plaintiffs filed the instant action. In this action, the plaintiffs seek judgment and damages from the United States.[4] On August 3, 1998, Judge Thomas dismissed all claims except the three at issue here. In its current posture, the plaintiffs make claim against the United States for malicious prosecution,

ly in the opinion, Judge Thomas noted he was addressing only those arguments that he found relevant.

This Court will not revisit the defendant's dismissal arguments and addresses only the summary judgment arguments raised in Doc. 78.

**3.** For ease in discussion, the Court hereinafter refers to Plaintiffs Taylor, Carr, and Herron collectively as "Plaintiffs Taylor" or plaintiffs.

Two other plaintiffs, Dan Glenn and Donald Ruff, settled their claims with defendants.

**4.** Originally the plaintiffs sued Postmaster General Runyon, former Postal Inspectors Marshall and Kuack, and Postal Inspectors Wascak and Sitter. Magistrate Judge Thomas substituted the United States of America for Defendants Marshall, Kuack, Wascak, and Sitter. Judge Thomas dismissed claims against Runyon in the August 3 opinion.

abuse of process, and intentional infliction of emotional distress.

On August 24, 1998, the defendant moved this Court to dismiss this action, claiming lack of subject matter jurisdiction. With this motion, Defendant United States argues that the Federal Employees Compensation Act's exclusive jurisdiction bars plaintiffs' FTCA claims. The Federal Employees Compensation Act compensates federal employees for injuries arising from federal employment. The plaintiffs respond by arguing the FECA does not apply because their injuries are not related to employment.

On June 14, 1999, Defendant United States filed a motion for summary judgment. The defendant says that plaintiffs' malicious prosecution and abuse of process claims fail because an independent grand jury found probable cause to indict. The defendant also says there is insufficient evidence to support a claim for intentional infliction of emotional distress.

Defendant United States' motion to dismiss fails because the plaintiffs' claims fall outside FECA coverage. The Court therefore denies the defendant's motion to dismiss.

Though this Court finds jurisdiction to decide this case, the Court finds no evidence sufficient to sustain the plaintiffs' claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress. The Court grants the defendant's motion for summary judgment and dismisses this action.

The Court addresses each of Defendant United States' motions in turn.

## II. SUBJECT MATTER JURISDICTION

### A. Legal Standard

The standard used to review a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the nature of the motion.

 Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. FedR.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). A facial attack challenges the sufficiency of the pleading itself. In such cases, the Court must take all material allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

 When responding to a facial attack on subject matter jurisdiction, the plaintiff's burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996). On the contrary, the plaintiff can "survive the motion by showing any arguable basis in law for the claim made." *Id.*

 On the other hand, a factual attack does not challenge the sufficiency of the pleading's allegations. Rather, it challenges the court's very power to hear the case; i.e., the factual existence of subject matter jurisdiction. In these cases, no presumptive truthfulness applies to the factual allegations. Moreover, the plaintiff has the burden to prove the existence of jurisdiction. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990).

 In reviewing a factual attack, a district court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 592 (internal citations omitted). The court has wide discretion to allow affidavits, documents, and even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins.*, 922 F.2d at 325. Ultimately, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

Here, Defendant United States challenges the power of the Court to hear the action on grounds that another federal law preempts plaintiffs' federal tort claims.

## B. Analysis

Defendant United States argues that the federal worker's compensation scheme preempts Plaintiffs Taylor's tort claims for intentional infliction of emotional distress, malicious prosecution, and abuse of process. The defendant says that, at the very least, a substantial question regarding coverage exists. The Court disagrees.

This case implicates the relationship of two statutory schemes that control the liability of the United States in various circumstances. On one hand, the Federal Tort Claims Act waives sovereign immunity to allow suits against the United States for damages arising from tortious acts of government employees. 28 U.S.C. § 1346(b).

On the other hand, the Federal Employees Compensation Act addresses work-related injuries of federal employees. 5 U.S.C. § 8102(a).[5] The FECA establishes a comprehensive program of workers' compensation for government employees injured in work-related accidents. *Wright v. United States*, 717 F.2d 254, 256 (6th Cir. 1983).

■ The FECA covers claims "for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. 8102(a). Generally, an injury occurs "in the performance of duty" if it arises out of and in the course of employment. *Tarver v. United States*, 25 F.3d 900, 902 (10th Cir.1994). The FECA is the exclusive remedy against the United States for an injury within its coverage. 5 U.S.C. § 8116(c).

The Secretary of Labor administers FECA and has exclusive authority to decide all questions arising under FECA. 5 U.S.C. § 8145 ("The Secretary of Labor shall administer, and decide all questions under, this subchapter"); *Wright*, 717 F.2d

at 256 (noting exclusivity of Secretary's role).

■ If a substantial question regarding the coverage of FECA exists, the Secretary of Labor must determine whether FECA applies. *McDaniel v. United States*, 970 F.2d 194, 198 (6th Cir.1992) (stating when a substantial question arises, courts will stay proceedings pending the Secretary's decision). That decision is binding and is not reviewable by the courts. 5 U.S.C. § 8128(b).

■ If the Secretary finds the FECA does not apply, a Court may hear a claim. *McDaniel*, 970 F.2d at 198. If the Secretary determines the FECA applies, this Court must dismiss the case for lack of subject matter jurisdiction. So long as the injury is of the type intended to fall within FECA's coverage, the fact that the Secretary does not award compensation for that injury is irrelevant. *McDaniel*, 970 F.2d at 197. Once an injury falls within the coverage of FECA, its remedies are exclusive and the court cannot entertain any other claims. *Id.*

■ A substantial question exists regarding FECA coverage unless it is certain the Secretary of Labor would find *no* coverage under FECA. *Farley v. United States*, 162 F.3d 613, 615 (10th Cir.1998); *White v. United States*, 143 F.3d 232, 234 (5th Cir.1998); *Bruni v. United States*, 964 F.2d 76 (1st Cir.1992).

■ The pivotal question for this Court, then, is whether a substantial question regarding FECA coverage exists. The Court's inquiry is straightforward: are plaintiffs' injuries clearly *not* covered by FECA? If FECA does not apply, the Court has jurisdiction to hear this action. If plaintiffs' claims do not clearly fall outside FECA's coverage, a substantial question exists and the Court does not have subject matter jurisdiction to hear this

---

5. The applicability of FECA to U.S. Postal Service employees is established by statute: Officers and employees of the Postal Service shall be covered by subchapter 1 of

Chapter 81 of title 5, relating to compensation for work injuries.

39 U.S.C. § 1005(c).

case. *Wright v. United States,* 717 F.2d at 257.

Because the Court finds Plaintiffs Taylor's claims fall outside FECA, no substantial question exists regarding coverage and plaintiffs' FTCA claims may proceed.

■ Under FECA, an employee can make claim only when the employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a). The Sixth Circuit has interpreted § 8102 to include injuries arising out of a "special zone of danger created by an obligation or condition of employment." *Wright,* 717 F.2d at 257.

In deciding whether plaintiffs' claim falls outside FECA, the Court considers the Department of Labor's interpretation of the statute. The Department interprets "in the performance of duty" to be "the equivalent of the commonly found prerequisite in workers' compensation law, 'arising out of and in the course of employment.'" *In re Stidham,* 1995 WL 944338 (E.C.A.B. March 27, 1995) (citing *James E. Chadden, Sr.,* 40 ECAB 413, 414 (1988)).

■ For an injury to "arise out of" employment, "the facts of the case must show some substantial employer benefit is derived or an employment requirement gave rise to the injury." *Id.*

In their complaint, plaintiffs claim emotional distress resulted from the defendant's "devising, implementing and supervising" the sting. But this does not show the Postal Service received any substantial employer benefit or that an employment requirement gave rise to the injury.

As for the malicious prosecution and abuse of process claims, the defendant does not show that the Postal Service received any substantial employer benefit or that an employment requirement gave rise to the injury. The conduct supporting these claims arose after the plaintiffs ceased working for the Postal Service.

Though their employer's internal investigation led to the sting, the internal investigation did not give the Postal Service substantial benefit and no employment requirement gave rise to the injury.

■ To fall within the FECA, a plaintiff's injuries must also occur "in the course of" employment. The "in the course of employment" requirement addresses the work setting, the locale, and the time of injury. *Id.* (citing *Denis F. Rafferty,* 16 ECAB 413, 414 (1965)). For an injury to occur in the course of employment, the injury must occur: (1) at a time when the employee may reasonably be said to be engaged in his master's business; (2) at a place where he may reasonably be expected to be in connection with the employment; and (3) while he was reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. *Id.* (citing *Carmen B. Gutierrez,* 7 ECAB 58, 59 (1954)).

Nearly all of the activity leading to arrest and indictment occurred off the work site and outside work hours.[6] None of the drug exchanges occurred at the workplace or during work hours. None occurred while plaintiffs were engaged in fulfilling work duties or doing something incidental to work. The criminal indictments resulted from a separate grand jury investigation. The Cuyahoga County Prosecutor

---

**6.** There is no question that the informants regularly instigated conversations with plaintiffs about possible drug deals during work hours. However, there is little evidence that plaintiffs agreed to participate in a given transaction while they were at work.

The Postal Service's Investigative Memorandum on Fletcher Carr's activity states the drug deals were set up by phone calls to Carr while he was at work. However, the arbitrator hearing his grievance for being fired noted there was no evidence of any such calls. No recording or witnesses to the calls were evident. There is no evidence in the Investigative Memoranda that Taylor made any arrangements to set up drug deals while at work.

There is some indication that some plaintiffs may have engaged in the accused conduct during official work breaks. The arbitrator handling Gary Herron's grievance noted that he made arrangements to provide drugs to an undercover informant while he was working on the shop floor.

pursued the charges until plaintiffs entered guilty pleas. No evidence suggests that plaintiffs were injured while fulfilling the duties of his employment or engaged in doing something incidental thereto.

For these reasons, plaintiffs' injuries cannot be said to have occurred in the course of employment. Therefore, no substantial question regarding FECA coverage exists and plaintiffs' claims may proceed under the Federal Tort Claims Act.

The Court now addresses Defendant United States' motion for summary judgment.

### III. SUMMARY JUDGMENT

#### A. Legal Standard

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987); *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.,* 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court address each of the three remaining claims with these standards in mind.

#### B. Analysis

##### 1. Intentional Infliction of Emotional Distress

The complaint alleges that defendant's action in devising, implementing, and supervising the sting operation resulted in plaintiffs' emotional distress. Defendant United States argues its conduct was not so beyond all possible bounds of decency or so utterly intolerable as to support plaintiffs' claim.

To recover on a claim for intentional infliction of emotional distress, a plaintiff must show: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the ac-

tor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Garcia v. ANR Freight System,* 942 F.Supp. 351, 359 (N.D.Ohio 1996) (citing *Tschantz v. Ferguson,* 97 Ohio App.3d 693, 702, 647 N.E.2d 507 (1994)); *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983).

 Liability for intentional infliction of emotional distress will only be found in the most extreme circumstances:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Yeager,* 6 Ohio St.3d at 375, 453 N.E.2d 666.

 The emotional distress alleged does not have to manifest itself in physical injury, but it must be serious. *Id.* at 374, 453 N.E.2d 666. Serious emotional distress is "emotional injury which is both severe and debilitating ... [and is] found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* (citing *Paugh v. Hanks,* 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983)).

Here, plaintiffs allege severe emotional injuries from being falsely charged, prosecuted, and fired for being drug traffickers.

Plaintiffs report various family problems, suicidal thoughts, depression, and alcohol problems stemming from defendant's conduct. None sought medical help.[7]

Even if the effects of defendant's conduct were serious, plaintiffs must also show that the conduct itself was outrageous and extreme in degree.

 At its core, plaintiffs complain that Postal Inspectors knew, or should have known, that informants were fabricating evidence. The evidence before the Court, however, shows that the informants first reported to Postal Inspectors that the drug buys were legitimate. Only later did the informants reveal the deception to the inspectors.

There is conflicting information regarding the timeline of the informants' deception, but none of it works to plaintiffs' favor. Informant Willie Kemp has testified that he began lying to inspectors in early 1992.[8] Kemp testifies that he only informed Inspector Marshall his deception regarding Carr and Herron in July 1992.

In September 1991, the Cuyahoga Grand Jury issued indictments. The indictments charged plaintiffs with illegal activity between Fall 1990 and May 1991. The indictments were issued against the plaintiffs before the earliest evidence of the scam's existence. Plaintiffs Carr and Herron pled guilty several months before Kemp informed postal officials of his deception regarding them.

Regarding Taylor, Kemp's statements about when he informed Postal Inspectors that Taylor had not bought or sold drugs are vague.[9] Another informant stated he told Inspector Marshall sometime after

---

7. Plaintiff Taylor did not receive formal treatment but did see a psychologist on a casual, drop-in basis over four months.

8. Another informant, Howard Rice, stated the scam began in October 1991.

9. Informant Kemp's deposition testimony was vague with respect to Taylor:

> Q: Did you ever tell Inspector Marshall that Donald Taylor did not sell you drugs?
> A: Yes, I did. I finally told him.
> Q: At what point?
> A: I can't recall how long it was that I told him, but I did tell him.
> Q: Was it fairly recently or was it during the time that this was all going on, around 1991?
> A: Around '91, '92.

February 1991 that Taylor had not sold drugs. However, Taylor testified in his deposition that he traveled with an informant on a drug buy.[10]

After being fired, Carr and Herron filed grievances under the collective bargaining agreements covering their employment. The arbitrators found that the Postal Service had just cause for firing Carr and Herron.

Plaintiffs argue that the Court should disregard these arbitrator's decisions. Plaintiffs contend the arbitrators' holdings were induced by fraud because they did not have Kemp's truthful account of what happened.

The Court disagrees with this interpretation. In Carr's case, the arbitrator heard the audio tapes and found Carr's explanation of events wholly unbelievable. In Herron's case, the arbitrator found that because Herron had not been candid about the incidents, his version of the story could not be seen as credible. In other words, Informant Kemp's testimony was not the sole basis of the arbitrator's decision.

The plaintiffs also fail to offer any evidence that would illuminate defendant's improper role, if any, in the prosecutor's decision to pursue charges or in the grand jury process that led to the indictments.

In light of the evidence presented, the Court finds insufficient evidence to create a genuine issue of material fact that the Postal Inspectors went beyond all possible bounds of decency in devising, implementing, or supervising the sting operation, or that their conduct was utterly intolerable in a civilized community. Therefore, the Court grants Defendant United States' motion for summary judgment on this claim.

### 2. Malicious Prosecution

Plaintiffs Taylor contend that the Postal Inspectors instituted legal proceedings against them without probable cause and with malice. Because the evidence fails to raise a genuine issue, the Court grants defendant's motion on this claim.

To prevail on a claim for malicious prosecution in Ohio, plaintiffs must show malice in instituting or continuing the prosecution, lack of probable cause, and termination of the prosecution in favor of the accused. *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 142, 559 N.E.2d 732 (1990). The return of an indictment by a grand jury is evidence of probable cause. *Friedman v. United States*, 927 F.2d 259, 261–62 (6th Cir.1991). The plaintiffs were prosecuted after grand jury indictment.

When prima facie evidence of probable cause exists, the plaintiff has the burden of producing substantial evidence to establish a lack of probable cause. *Id.* Plaintiffs Taylor say they have produced substantial evidence that there was no probable cause because Informant Willie Kemp testified there was fraud in the grand jury process.

Kemp was not involved in the grand jury process and his transcript does not reveal anything involving the grand jury. Plaintiffs provide no evidence regarding what may have occurred therein.[11] Kemp's testimony, without more, does not implicate what occurred before the grand jury.

Further, as explained earlier, Kemp testified that Inspector Marshall first learned about fabricated drug deals regarding Carr and Herron in mid–1992, nearly ten months after the grand jury handed down its indictments. Informant Rice stated he and Kemp did not even begin "scamming" the Postal Inspectors by fabricating drug deals until October 1991. At one point Kemp testified the scam did not begin until early 1992.

Plaintiffs also fail to show that the Postal Inspectors exercised control over

---

**10.** Further, at his sentencing hearing, Taylor admitted that he helped his friend, the informant, by purchasing heroin.

**11.** Apparently plaintiffs sought a record of the proceedings, but were denied for failure to identify a particularized need.

the bringing of charges against them. In a malicious prosecution action, when the plaintiff fails to show the indictment was not the result of the prosecutor's uncontrolled discretion to prosecute, he fails to rebut the presumption of probable cause raised by the indictment. *Robbins v. Fry*, 72 Ohio App.3d 360, 362, 594 N.E.2d 700 (citing *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 62, 379 N.E.2d 239 (1977)).

Inspector Marshall forwarded investigatory reports on the drug deals to the Cuyahoga County Prosecutor. At the end of each he informed the prosecutor that he would cooperate to the degree she saw fit:

> I will be available at your convenience for any further discussion you may desire in connection with this case, and for any further additional information or investigation you may deem warranted.

The deference to the prosecutor's discretion in handling the case negates any suggestion that Inspector Marshall played any role other than delivering reports. There is no evidence that Inspector Marshall exercised any control over the prosecutor's decision to bring the charges to a grand jury.

Finally, "once a criminal complaint is issued, the complainant is merely a witness for the state in the proceedings, the disposition of which lies within the province of the trial court." *Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 279, 549 N.E.2d 1210 (1st Dist.1988); *see also Runyon v. Columbus Southern Power Co.*, 1995 WL 390784, *3 (Ohio App. 10 Dist. June 27, 1995) (same). In this case, the trial did not proceed because plaintiffs entered guilty pleas.

In light of the evidence presented, the Court finds that plaintiffs fail to meet their burden on summary judgment. Therefore, the Court grants Defendant United States' motion on the malicious prosecution claim.

### 3. Abuse of Process

■ Plaintiffs Taylor allege the Postal Inspectors instigated criminal charges against them for ulterior motives, including career advancement and conversion of government funds.[12]

■ To prevail on a claim for abuse of process, plaintiffs must show: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer, & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 626 N.E.2d 115 (Ohio 1994). Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 270, 662 N.E.2d 9 (Ohio 1996).

Plaintiffs argue that the abuse of process here is the improper continuation of unfounded proceedings against them, despite defendant's knowledge that plaintiffs were not dealing drugs.

Plaintiffs Taylor have argued throughout their briefs that the criminal charges against them lacked probable cause. Plaintiffs have also effectively argued that the proceedings against them were not set in motion in proper form because they were knowingly based on false information.

The Court would view this claim as one in the alternative to the malicious prosecution claim, but plaintiffs continue to assert the lack of probable cause even in its argument supporting the abuse of process claim. Therefore, plaintiffs' claim fails as a matter of law.

■ Even if plaintiffs contended that probable cause existed, the claim would

---

12. Apparently, the success of the investigation would determine how much funding the Postal Inspectors received in the following year's budget. Thus, the higher the arrest/conviction rate, the higher the budget would become.

still fail. In an abuse of process case, the improper purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb*, 75 Ohio St.3d at 270, 662 N.E.2d 9. A plaintiff may show the ulterior purpose involved by showing a direct demand for collateral advantage. Demand may also be inferred from how the process was carried out. *Black v. Pheils*, 1998 WL 833531, *3 (Ohio App.Ct. 6th Dist. Dec. 4 1998).

Even if the inspectors sought career advancement or more government funding for their department, there is no evidence the Postal Inspectors used the charges to achieve a collateral advantage as against plaintiffs. There is no evidence the inspectors attempted to extract anything from the plaintiffs by failing to report their alleged knowledge of plaintiffs' innocence.

That the inspectors were indifferent to or ignored plaintiffs' plight is not enough. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions. *Yaklevich*, 68 Ohio St.3d at 298, 626 N.E.2d 115 (citation omitted).

Therefore, the Court grants Defendant United States' motion for summary judgment on this claim.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Defendant United States' motion to dismiss for lack of subject matter jurisdiction and grants defendant's motion for summary judgment. [Docs. 53 and 78, respectively]. The Court dismisses this action.

IT IS SO ORDERED.

## ORDER

The Court has issued its opinion in the above-captioned matter. For the reasons stated therein, the Court denies Defendant United States' motion to dismiss for lack of

subject matter jurisdiction and grants defendant's motion for summary judgment. [Docs. 53 and 78, respectively].

The Court terminates this action pursuant to Rule 58 of the federal rules.

IT IS SO ORDERED.