**Gabriel Eduardo ABREU–GUZMAN, and Rosa L. Guzman–Nieves, Plaintiffs,**

v.

**Alicia FORD, et al., Defendants.**

**No. Civ. 95–1246(DRD).**

United States District Court, D. Puerto Rico.

Sept. 15, 1999.

Benny F. Cerezo, Rio Piedras, PR, for Plaintiffs.

Isabel Munoz-Acosta, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

The motion before the Court is a Motion For Summary Judgment (Docket No. 26) filed by Defendants, Alicia Ford, and the United States, on December 15, 1998. Plaintiffs, Gabriel Abreu Guzmán ("Abreu") and his mother, Rosa Guzmán Nieves ("Guzmán"), opposed. (Docket No. 46). For the following reasons the Motion For Summary Judgment is **GRANTED.**

### I. BACKGROUND

The facts of this case are straight-forward and are taken from the Plaintiffs' Statement Of Contested Facts (Docket No. 46), and, where uncontroverted, supplemented by the Defendants' Statement Of Uncontested Facts (Docket No. 26).

On or about January 22, 1993, Special Agent Steve Riley ("Riley") and Jay Stoothoff ("Stoothoff"), along with other Drug Enforcement Administration ("DEA") Agents, initiated an investigation pertaining to the transportation of multi-kilograms of cocaine entering Puerto Rico en route to New York. Several defendants were initially arrested in this investigation followed by a superseding indictment charging others for criminal conspiracy involving approximately 68 kilograms of cocaine. During this investigation Riley and Stoothoff assisted in the debriefing of co-operating defendants and sources regarding the criminal conspiracy. They learned in the investigation that one of the co-conspirators was identified as "Junior." Riley later obtained the name "Junior" and telephone number on a piece of paper which was provided to him by a cooperating defendant. On or about March 26, 1993, Riley prepared a DEA Administrative subpoena to the Puerto Rico Telephone Company (PRTC) requesting subscriber information regarding telephone number (809) 380–0255. The DEA was provided with subscriber information regarding this telephone number, which yielded the subscriber as Gabriel Abreu Guzmán, residing at 751 Calle Victor Figueroa, Santurce, Puerto Rico.

Agents Riley and Stoothoff also obtained and viewed a photograph of Abreu, which appeared to come from a driver's license. Indeed, Abreu states that the photograph was one he submitted years before for his learner's permit.

On or about April 20, 1993, Riley and Stoothoff met with a cooperating defendant who described the co-conspirator known to him/her as "Junior" as being a black, light skinned Hispanic male, approximately 6'0" to 6'2" in height, weighing approximately 175 to 180 pounds, black hair, clean shaven 33 to 35 (years of age) and driving what the cooperator believed to be a 280–Z Nissan, grey in color.

Riley and Stoothoff then attended a meeting at the U.S. Attorney's Office with DOJ Senior Litigation Counsel Jose A. Quiles and a cooperating defendant. At the meeting several photographs were shown to the cooperator. The cooperator picked the photograph of Gabriel Abreu Guzmán as "Junior" but stated that the photograph appeared to be a younger version of "Junior".

Riley also served a DEA Administrative subpoena to the Sands Hotel, Isla Verde, Puerto Rico requesting hotel guest records and telephone tolls pertaining to alleged co-conspirator Daniel Nuñez. Nuñez stayed at the Sands Hotel during the timeframe of the alleged overt acts in this

investigation. On two occasions defendant Nuñez placed calls from his registered hotel room to telephone number 380–0255 which was known to Riley as co-conspirator "Junior's" telephone number and which was subscribed to Abreu.

The United States District Court issued a Warrant For Arrest, on April 28, 1993, for John Doe 2, a.k.a. "Junior".

On May 6, 1993 defendant Alicia Ford ("Ford") was assigned as Group Supervisor for DEA San Juan and assisted by Special Agent Ana Saulnier went out to execute three arrest warrants, including one arrest warrant for John Doe, a.k.a. "Junior". Prior to the checking the addresses for John Doe a.k.a. "Junior", the agents were briefed on the locations and description photographs of the addresses for John Doe a.k.a. "Junior", that were going to be checked. In addition, the agents were provided the address and physical description of John Doe, a.k.a. "Junior", as approximately 6'0" to 6'2" tall, approximately 175 to 180 pounds, black hair, clean shaven, approximately 33 to 35 years of age and driving a gray 280–Z Nissan. The agents checked the Lopez–Landrau address, and did not find anyone home, then went to the Calle Victor Figueroa address and knocked on the door and no one was home. They checked with neighbors and advised them we were looking for Gabriel Eduardo Abreu–Guzmán, and showed the photograph they had for him.

On that same date, May 6, 1993, at approximately 3:30 p.m., the receptionist at DEA Headquarters called the group and advised that Abreu was in the reception area. Defendant Ford and Special Agents Ana Saulnier, Izquierdo and Reginald Cheney proceeded to the reception area and made contact with Abreu and two women whom had accompanied him. Abreu was placed into custody and defendant Ford explained the charges and advised them of the process that was going to take place; booking and pretrial services.[1] Abreu denied being the person they were looking for, and one of the women with him was also adamant that the agents had the wrong person. Curiously, although Abreu had his wallet with credit cards on his person, he had no identification.

Also on the day of his arrest, plaintiff Abreu was showed a photocopy of a photo which he identified as a very old photo of him. At this point, the Court notes that particularities of the identifying photograph are in dispute, which will be dealt with extensively in the discussion below. Abreu was also photographed on that day. The personal history taken after plaintiff's arrest shows he is a Puerto Rican black 70" in height, weighing 202 pounds with brown eyes and brown hair. At the time of his arrest plaintiff was 25 years old.[2]

After his arrest on May 6, 1993 plaintiff Abreu Guzmán was taken before Magistrate Judge Arenas who ordered his com-

1. Although Plaintiffs state in their Statement Of Contested Facts, that "[t]he agents did not explain the circumstances that lead (sic) to the Abreu's arrest ...," neither of the references pointed to by Plaintiffs support that allegation. *See* (Docket No. 26, Statement Of Contested Facts, ¶ 1.b.) (citing Exhibit A, and J pp. 20–27). On the other hand, Defendants have proffered two sworn statements showing that the agents did inform Abreu (Docket No. 26, Exhibits XIII and XIV), and Plaintiff's, Rosa Guzmán Nieves, deposition testimony corroborates that Ford told Plaintiffs she was looking for Guzmán's son—Ford told Plaintiff, Guzmán "we're looking for your son, we have an accusation here from a federal grand jury." (Docket No. 46, Exhibit J p. 21).

2. Plaintiff's, Gabriel Abreu Guzmán, affidavit of July 18, 1996, states that at the time of his arrest "the undersigned was 25 at the time." (Docket No. 26, Exhibit XVII, ¶ 6). Further, the Personal History Report (Docket No. 26, Exhibit XXI), corroborates the affidavit showing Abreu's date of birth as April 10, 1968, making him 25 years old on the day of arrest, May 6, 1993. Abreu's attempt to say that he "was only 23 at the time" in his subsequent affidavit of August 25, 1999 (Docket No. 46, Exhibit A, ¶ 6), simply can not be used to contradict his previous sworn statement.

mitment to the Puerto Rico State Penitentiary. The detention hearing was set for May 11, 1993 and the arraignment for May 12, 1993. On May 6, 1993, the Court appointed plaintiff a counsel. On May 11, 1993, attorney Lydia Lizarriba Masini entered Appearance on behalf of plaintiff. On September 2, 1993 Judge Pérez Giménez signed Order Setting Conditions of the Release of plaintiff.

On January 28, 1994, Stoothoff served a subpoena to the Puerto Rico Telephone Company regarding the status of Gabriel Abreu Guzmán['s] account and claims regarding (809) 380-0255. The information obtained, failed to show any documentation of fraudulent claims or evidence of the cloning of Gabriel Abreu Guzman['s] assigned cellular telephone number.

On February 16, 1994 the United States filed Motion For Voluntary Dismissal.

## II. SUMMARY JUDGMENT STANDARD

■ A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED.R.CIV.P. 56(c). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997), and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). The court should " 'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (quoting *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The court may consider any material that would be admissible or usable at trial." *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed.1998). "But the court should do no more than this in reviewing the quality ·of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter....' " *Lipsett v. University of P.R.*, 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995) (citations omitted). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## III. DISCUSSION

The Amended Complaint (Docket No. 25 and 45) alleges violations of Plaintiffs' Constitutional rights arising under the Fourth, Fifth, and Sixth Amendments by Drug Enforcement Agency ("DEA") agents Alicia Ford, William J. Mitchell, Jay Soothoff, Steve Riley, Waldo Santiago, Francisco J. Alvarez, Reginald Cheney, Ivan Rios, and INS agent Richard Escalera, John Doe and Jane Doe, in their personal capacities. Further, the Amended Complaint alleged claims "against the Drug Enforcement Administration of the Department of Justice of the United States Government for illegal and wrongful arrest, detention and incarceration of plaintiff Gabriel E. Abreu–Guzman." *Id.* The only specific reference to legal transgressions is as follows:

"The defendant agents, in their personal capacities, acting within the scope of

their employment, and the Drug Enforcement Administration are responsible for violating plaintiff's constitutional rights of due process of law, for unreasonable search and seizure, illegal detention, incarceration and arrest of his person without probable cause, with intent and fully aware that the person indicted as 'Junior' was not Gabriel E. Abreu–Guzman."

*Id.* Plaintiffs invoke the Court's jurisdiction "based on the doctrine of *Bivens vs. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)." *Id.*

Essentially, the Plaintiffs assert three reasons showing that Defendants violated plaintiff's rights in obtaining a warrant and his subsequent detention: (1) photograph used to identify Abreu as "Junior" was "substantially altered" by Defendants; (2) description of "Junior" did not match Abreu; and (3) Defendants knew the above and still proceeded with Abreu's arrest, detention, and prosecution.

**A. Abreu's Photograph**

According to the Plaintiffs' version of the facts, which track Defendants' uncontested facts above, "The DEA located the plaintiff Gabriel Abreu by obtaining his name and address from the Puerto Rico Telephone Company's records of said telephone [number (809) 380–0255]. Using the Puerto Rico driver registration system, they obtained a photograph of the Plaintiff submitted years before for his learner's permit." (Docket No. 46, p. 4); *see also* (Docket No. 26, Statement Of Uncontested Facts, ¶ 3–5). Plaintiffs allege that the "photograph was then altered considerably by the DEA agents, adding a moustache and an afro to it, was presented to their CI, confidential informant, who allegedly picked the Plaintiff out of a photo lineup and identified him as a younger version of 'Junior'." *Id.* The Defendants acknowledged that "[o]n the day of his arrest plaintiff Abreu Guzmán was showed a photocopy of a photo which he identified as a very old photo of him. (See attached as Exhibit XVII Affidavit of Gabriel Abreu

Guzmán and Exhibit VIII)." (Docket No. 26, Statement Of Uncontested Facts, ¶ 17); *see also* (Docket No. 26, Exhibit VIII) (photograph with dimensions of approximately 1 1/2″ by 1 3/4″).

First, the record is devoid of evidence to support the allegation that the photograph presented to the CI was altered. Second, even if the photocopy of a photograph was altered, and even if the alteration was intentional, such alteration is standard operating procedure for law enforce to change a suspects hair and facial hair. Third and most importantly, even if the photocopy was intentionally altered, the alteration served a purpose and that was to assist in the location of the subject of the photograph. Regardless of the intentional alterations, the record shows undoubtedly the subject of the photograph, Abreu, was located. *See* (Docket No. 26, Exhibit XVII Affidavit of Gabriel Abreu Guzmán July 18, 1996) ("Alicia Ford ... showed me a photocopy of a photo and asked me if I was that person, I replied that it was me and inquired where they had obtained that photo, since it was very old."); *and* (Docket No. 46, Exhibit A Affidavit of Gabriel Abreu Guzmán August 25, 1999) ("Alicia Ford ... showed me a photocopy of a photo. She asked me if I was that person. I replied that it was me.... I inquired where they had obtained that photo, since it was very old."). Moreover, irrefuted is the fact that a cooperator had previously picked out from several photographs "the photograph of Abreu as 'Junior' but stated that the photograph appeared to be a younger version of 'Junior'." (Docket No. 26, Statement Of Uncontested Facts, ¶ 7).

**B. "Junior's" Description Not Abreu**

Abreu argues that the description of "Junior" did not fit him. The description given from a cooperating defendant of "Junior" was "a black, light skinned Hispanic male, approximately 6′0″ to 6′2″ in height, weighing approximately 175 to 180 pounds, black hair, clean shaven[, and] 33

to 35 (years of age)." (Docket No. 26, Statement Of Uncontested Facts, ¶ 6). Whereas, the Personal History Report reveals that at the time Abreu was a black Puerto Rican male, 70″ (5'10″) in height, weighing 202 pounds, brown hair and 25 years old. *See* (Docket No. 26, Exhibit XXI); *Cf.* (Docket No. 26, Exhibits XVIII and XIX) (photographs taken upon arrest depicting Abreu as between 6'0″ and 6'3″ in height); *and* (Docket No. 46, Exhibit K—p. 23 ll. 13–17) ("Q. How tall was he? A. Was about 5'10″, was smaller than me [Abreu], a little bit smaller than me.").

### C. Defendant's Knew About Abreu's Photograph And "Junior's" Description Not Abreu

The Plaintiffs allege that although Defendants knew that Plaintiff was not "Junior" and yet they still proceeded to detain, arrest, and assist in his prosecution. In addition, the Amended Complaint avers that an unnamed agent "Jane Doe made a comment in front of plaintiff Gabriel Edurado Abreu, his mother Rosa L. Guzmán–Nieves, and others as to the marked difference in description between 'Junior' and Gabriel Edurado Abreu." (Docket Nos. 25 and 45). Abreu avers that "[k]nowing that Gabriel Abreu did not match the physical description and prompted by his claim of misidentification, Agent Alicia Ford commented in the presence of the Plaintiffs, Gabriel Abreu and Rosa Guzmán–Nieves, as to the marked difference between the physical description of 'Junior' or 'Junior Rivera' and Gabriel Abreu." (Docket No. 46, Statement Of Contested Facts ¶ d.). Plaintiffs' assertion of fact is supported by a sworn statement and deposition testimony and at this summary judgment juncture is construed in favor of Plaintiffs with every reasonable inference adduced therefrom. *See id.* (citing Docket No. 46, Exhibit A; J pp. 18–27; and K, pp. 18–24.)

### D. *Bivens* Claim

■ *Fourth Amendment.* The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV. Simply put, Plaintiffs have offered no evidence to question the propriety of the probable cause for the warrant issued for the seizure of "Junior". As thoroughly discussed above, the alteration, even if intentional, of a photocopy of Abreu's photograph does not come close to a material fabrication of evidence or the use of a false statement to obtain a search warrant. *See, generally, Aponte Matos v. Toledo Davila,* 135 F.3d 182 (1st Cir.1998). "Seeking an arrest warrant is 'objectively reasonable' so long as the presence of probable cause is at least arguable." *Prokey v. Watkins,* 942 F.2d 67, 72 (1st Cir. 1991) (citing *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985)). "To be 'arguable' under *Floyd* means that it is possible for 'officers of reasonable competence' to fairly disagree over whether probable cause exists.... The presence of probable cause would not be 'arguable' if no reasonably competent officer would have found probable cause." *Prokey v. Watkins,* 942 F.2d at 72 n. 4 (citations omitted). Further, the warrant was issued pursuant to a grand jury indictment. *See* (Docket No. 26, Exhibit XII). Therefore, without a scintilla of evidence to prove otherwise, the Courts holds that the warrant was supported by probable cause.

■ Next, the Court turns to the execution of the valid warrant. "Qualified immunity protects both federal and state officials from liability for damages in a civil rights action if 'a reasonable officer **could have** believed [his actions] to be lawful, in light of clearly established law and the information the [acting] officer [ ] possessed.' " *Aponte Matos v. Toledo Davila,* 135 F.3d at 186 (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)) (empha-

sis added). The qualified immunity defense paints with a broad brush, protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citations omitted). The two part inquiry is well settled and if the first part is not met then, the analysis halts because "there is qualified immunity." *Aponte Matos v. Toledo Davila,* 135 F.3d at 187.

> "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would 'have understood that the challenged conduct violated that established right.' "

*Id.,* 135 F.3d at 186 (citations omitted); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Because the Court finds that there is *no* genuine issue of fact that Ford acted as a reasonable officer under the same circumstances the Court does not decide whether plaintiffs constitutional rights were clearly established. First, notwithstanding the alleged admissions of the discrepancies of the physical description of "Junior" in the warrant vis-a-vis Abreu, the description closely resembles Plaintiff. *See Rodriguez v. United States,* 54 F.3d 41, 46 (1st Cir.1995) ("slight discrepancies"—three-inch discrepancy in height and twenty-pound difference in weight—"could not have undermined the objective reasonableness of the arresting deputies' belief that plaintiff was the person named in the 1975 warrant."); *Dean v. City of Worcester,* 924 F.2d 364, 368 (1st Cir.1991) (taller arrestee does not make misidentification unreasonable.). Next, coupled with the approximate physical description was the photograph of Abreu. Not only did Abreu verify that photocopy used to identify him was of an old photo of himself (which clearly distinguishes this case from *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) and *Buenrostro v. Collazo,* 777 F.Supp. 128, 136 (D.P.R.1991)), a police cooperator had previously picked Abreu's photo out of several photographs as being "Junior", albeit a younger version. At the time of Abreu's arrest, although he had his billfold with credits cards with him he had no identification. *See* (Docket No. 46, Exhibit J—p. 21 ll. 18–20; p. 23 ll. 12–24; p. 27 ll. 23–24); (Docket No. 46, Exhibit K—p. 19 ll. 7–8; p. 24 ll. 5–6). In spite of Abreu's and his mother's protests that Abreu was not "Junior" *see Rodriguez v. United States,* 54 F.3d 41, 46 (1st Cir.1995) (despite that plaintiff protested she could not be the one name in the warrant, held arresting deputies had objective reasonable belief warrant was for plaintiff), and giving full regard to the alleged acknowledgments by the federal agents that discrepancies existed between the warrant's description and Abreu, *see Baker v. McCollan,* 443 U.S. 137, 145–146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or . . ."), the Court holds that Ford's actions were objectively reasonable under the circumstances. *See Dean v. City of Worcester,* 924 F.2d 364, 368 n. 4 (1st Cir.1991) ("A reasonable mistake in identification which leads to an arrest does not violate the arrestee's constitutional rights. *See Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *Gero v. Henault,* 740 F.2d 78, 85 (1st Cir.1984) ('[a]s a matter of law,' mistaken arrest of suspect police reasonably believed to be the person named in warrant does not violate constitutional rights.)"); *see also Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987) ("the objective reasonableness determination is for the judge to make, and not the jury."). Finally, the record does not support, even after all inferences are draw in Plaintiffs' favor, that Ford was either "plainly incompetent" or "knowingly violate[d] the law." *Hunter v. Bryant,* 502 U.S. at 229, 112 S.Ct. 534. Consequently, on the summary judgment

record, after drawing all inferences in Plaintiffs' favor, there is no genuine issue of material fact in controversy and the *Bivens* cause of action against Defendant, Alicia Ford, is **DISMISSED.** *See Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (nonmovant must "present definite, competent evidence to rebut the motion.").

 Additionally, no violations of the Fifth and Sixth Amendments are present. Abreu was indicted, arraigned and subsequently the charges against him dismissed. He was appointed and represented by counsel. Plaintiffs' mere allegations that Abreu was deprived of his due process rights by Defendants because they knew he was not "Junior" can not be sustained. *see Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("The ultimate determination of such claims of innocence is placed in the hands of the judge and jury.").

As for any *Bivens* claim that the Plaintiffs may have alleged against Defendant, the Drug Enforcement Administration of the Department of Justice of the United States Government, is hereby **DISMISSED.** *See F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

### E. Federal Torts Claim Act

 It is abundantly clear the Federal Torts Claim Act allows suit "in the same manner and to the same extent as a private individual under like circumstances," against the Government, "*Provided,* That, with regard to acts or omissions of investigative of law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, ..., out of assault, battery, **false imprisonment, false arrest, abuse of process,** or **malicious prosecution.**" 28 U.S.C. §§ 2674 and 2680(h) (emphasis added). By statute, the substantive law for the above enumerated underlying causes of action are to come from Puerto Rico law. *See* 28 U.S.C. § 1346(b); *Rodriguez v.*

*United States,* 54 F.3d 41, 44 (1st Cir. 1995). Although the Court does not believe Plaintiffs have alleged a cause of action against the agents analogous to the above FTCA claim against the United States, the Court notes that even if Plaintiffs had, because the remaining Defendants, including Ford, are federal agents, and because "under the FTCA, only the United States, not its agencies and/or employees, may be sued *eo nomine,*" all claims, other than *Bivens'* causes of action, as to the defendant federal agents would be dismissed for lack of subject matter jurisdiction. *See Lora–Rivera v. Drug Enforcement Administration Department of Justice,* 800 F.Supp. 1049, 1050 (D.P.R. 1992) (citing 28 U.S.C. § 2679(a)).

 *1. False Arrest and False Imprisonment.* As the First Circuit pointed out, "since the false arrest and false imprisonment claims under Puerto Rico law raise no relevant distinction in the present context, we treat them as identical causes of action." *Rodriguez v. United States,* 54 F.3d 41, 44 (1st Cir.1995) (citing as compare *Ayala v. San Juan Racing Corp.,* 112 P.R.Dec. 804, 812 (1982)); *see also Casanova v. González Padin,* 47 P.R.R. 462, 470 (1934). The Court finds that *Rodriguez v. United States,* 54 F.3d 41 (1st Cir.1995) is controlling over this misidentification case. Pursuant to *Rodriguez,* the Government is afforded a conditional privilege if "the arrestee was (a) ... a person sufficiently named or otherwise described in the warrant and [was] reasonably believed by the [officer] to be, the person intended, ..." *Rodriguez v. United States,* 54 F.3d at 46 (quoting the Restatement (Second) of Torts, § 125). Hence, the inquiry boils down to "whether (1) [Abreu] was 'sufficiently named or otherwise described in the warrant' and (2) [Ford] 'reasonably believed' that [Abreu] was 'the person intended' in the warrant." *Id.* (citing Restatement (Second) of Torts, § 125(a)). The reasoning and analysis of the *Bivens* claim above amply answers affirmatively both questions posed. The Court holds that when Ford made the arrest she had

probable cause and a reasonable belief that Abreu was "Junior". *See Harrington v. United States*, 748 F.Supp. 919, 933 (D.P.R.1990). In addition, the Government is afforded a conditional privilege. *See Rodriguez v. United States*, 54 F.3d at 46–47; *see also* Restatement (Second) of Agency, § 217(a)(iii). Thus, as a matter of law the false arrest/false imprisonment claim, pursuant to the FTCA, is **DISMISSED.**

2. *Abuse Of Process.*

The Court finds the following particularly instructive:

"The action of abuse of process is less developed in the civil code than in the common law. *See Harrington v. U.S.*, 748 F.Supp. 919, 934 (D.P.R.1990) ('Although the tort of abuse of process has been recognized in Puerto Rico, the Supreme Court has failed to identify its essential elements.'). *Like its cousin* malicious prosecution, abuse of process finds its roots in Article 1802 of the Civil Code, Puerto Rico's general tort provision. *Flamand v. Am. Int'l Group, Inc.*, 876 F.Supp. 356, 370 (D.P.R.1994) (citing *Reyes–Cardona*, 694 F.2d [894,] 896 [(1st Cir.1982)] ). As with malicious prosecution, it has been left to the courts to determine what are the elements of such cause of action arising under Article 1802.

Puerto Rico's civil law recognizes the doctrine of 'abuso del derecho' (abuse of law or right) as well as 'uso ilegal o indebido de un procedimiento judicial' (illegal or undue use of judicial process)."

*Boschette v. Buck*, 916 F.Supp. 91, 98 (D.P.R.1996). The *Boschette v. Buck* Court also recognized that the First Circuit "Court of Appeals has stated, however, that even assuming state law recognizes an abuse of process claim based on the initiation of a lawsuit, a party can only prevail if he proves the two elements of an abuse of process claim: ulterior motive and an act of abuse." *Id.* at 97 (citing *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995)); *see generally Ruff v. Runyon*, 60

F.Supp.2d 738, 749–50 (N.D.Ohio 1999) ("Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.... Plaintiffs argue that the abuse of process here is the improper continuation of unfounded proceedings against them, despite defendant's knowledge that plaintiffs were not dealing drugs.... In an abuse of process case, the improper purpose 'usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' ... there is no evidence the Postal Inspectors used the charges to achieve a collateral advantage as against plaintiffs. There is no evidence the inspectors attempted to extract anything from the plaintiffs by failing to report their alleged knowledge of plaintiffs' innocence. That the inspectors were indifferent to or ignored plaintiffs' plight is not enough. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions.") (citations omitted). After an extensive discussion of prevailing Puerto Rico caselaw, the Court in *Boschette v. Buck* went on to determine that "[e]ven assuming Article ·1802 of Puerto Rico's Civil Code includes a general cause of action for abuse of process, there is no evidence of ulterior motive or abuse in the instant case." *Boschette v. Buck*, 916 F.Supp. at 99.

 Likewise, on the face of the summary judgment record in this case, plainly Plaintiffs have failed to "produce some affirmative evidence of an improper, ulterior purpose." *Boschette v. Buck*, 916 F.Supp. at 100. Moreover, "*Navon* illustrates that evidence of motive alone is insufficient to prove an act of abuse." *Id.* (referring to *Simon v. Navon*, 71 F.3d 9, 16 (1st Cir. 1995)). Even after indulging every reasonable inference that can be adduced from the record, Plaintiffs have not proffered a scintilla of evidence that the agents were motivated by an ulterior purpose nor

that the agents perpetrated an act of abuse. Plaintiffs have simply not produced sufficient evidence to withstand summary judgment. This claim is **DISMISSED.**

 *3. Malicious Prosecution.* The four essential elements which must be alleged and proven for a claim of malicious prosecution under Puerto Rico law are: "i) institution and instigation of criminal proceedings against the claimant; ii) maliciously and without probable cause; iii) which ended favorably for the claimant; and iv) whereby the claimant suffers damages." *Boschette v. Buck,* 916 F.Supp. 91, 95, 96 (D.P.R.1996) (citation omitted); *see also Boschette v. Buck,* 914 F.Supp. 769, 774 (D.P.R.1995); *Lora–Rivera v. Drug Enforcement Administration Department of Justice,* 800 F.Supp. 1049, 1051 (D.P.R. 1992). The Court in *Lora–Rivera* stated that

" '[P]robable cause' has been defined in the context of this action as a 'suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' [S]aid question does not depend upon whether or not the offense was committed, 'but on the belief of the accuser in the truth of the charge made by him.' "

*Id.* at 1051–1052. The Court holds that the record as discussed above, specifically in the *Bivens* claim analysis, clearly supports probable cause for Ford's actions. *See Harrington v. United States,* 748 F.Supp. 919, 933 (D.P.R.1990). Alternatively, the Court finds persuasive the reasoning in *Lora–Rivera* that "[a]n indictment 'fair upon its face' and returned by a 'properly constituted grand jury' conclusively determines the existence of probable cause...." *Id.* at 1052 (citations omitted). Moreover, "[a]n indictment is sufficient to try a defendant on the counts charged therein, and satisfies the Fifth Amendment, and it cannot even be challenged on the ground that it is based on inadequate or incompetent evidence." *Id.* (citations omitted). An indictment was issued in this case. Thus, the Court holds that probable cause existed because of the facts on the record and due to the indictment of Abreu. Clearly from the application of the law above to this case, the malicious prosecution claim must be **DISMISSED.**

## IV. CONCLUSION

Wherefore, Motion For Summary Judgment (Docket No. 26) filed by Defendants, Alicia Ford, and the United States, is hereby **GRANTED** and the claims against Alicia Ford, and the United States are **DISMISSED.** *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

Because the Court is strongly convinced that the same reasoning and holding is applicable to all remaining federal agent Defendants, William J. Mitchell, Jay Soothoff, Steve Riley, Waldo Santiago, Francisco J. Alvarez, Reginald Cheney, Ivan Rios, and INS agent Richard Escalera, John Doe and Jane Doe, in their personal capacities, as to the *Bivens* cause of action, the Plaintiffs are hereby **ORDERED TO SHOW CAUSE by September 24, 1999** why this case should not be dismissed remaining Defendant agents. Failure to timely comply with this Order To Show Cause will signify to the Court a lack of prosecution and/or that Plaintiffs agree that the same reasoning and holding of this Opinion And Order should be applied in favor of the remaining Defendants, William J. Mitchell, Jay Soothoff, Steve Riley, Waldo Santiago, Francisco J. Alvarez, Reginald Cheney, Ivan Rios, and INS agent Richard Escalera, John Doe and Jane Doe, in their personal capacities, and consequently the case may be dismissed. **ABSOLUTELY *NO*** extensions of time will be granted.

**IT IS SO ORDERED.**